Case Nos. 22-4074/4076

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellant/Cross-Appellee,**

**v.**

**JONATHAN ALEXANDER MORALES-LOPEZ,**

**Defendant-Appellee/Cross-Appellant.**

---

On Appeal from the United States District Court
For the District of Utah
The Honorable Jill N. Parrish
District Court Case No. 2:20-cr-00027-JNP-1

---

**BRIEF FOR PLAINTIFF-APPELLANT/CROSS-APPELLEE**

---

TRINA A. HIGGINS
United States Attorney
District of Utah

JENNIFER P. WILLIAMS
Assistant United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone (801) 325-3260
Jennifer.Williams2@usdoj.gov

Attorneys for Plaintiff/Appellee

**ORAL ARGUMENT IS REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF PRIOR AND RELATED APPEALS .............................. v

INTRODUCTION ..................................................................................... 1

JURISDICTIONAL STATEMENT ............................................................ 2

STATEMENT OF THE ISSUES ............................................................... 3

STATEMENT OF THE CASE AND FACTS ............................................ 3

   I.  Criminal conduct. ....................................................................... 3

   II. Trial proceedings and motion for judgment of
       acquittal. ................................................................................... 6

   III. District court order vacating 18 U.S.C. § 922(g)(3)
        conviction. .............................................................................. 8

SUMMARY OF THE ARGUMENT ......................................................... 12

ARGUMENT ........................................................................................... 13

   I.  Standard of review. ................................................................. 13

   II. Statutory history of 18 U.S.C. § 922(g)(3) ............................. 14

   III. The district court erred in allowing Morales to
        advance a facial vagueness challenge to 18 U.S.C. §
        922(g)(3). ................................................................................. 15

   IV. The statute is facially constitutional. .................................... 23

   V. The statute is constitutional as applied to Morales's
        conduct. ................................................................................... 33

CONCLUSION ....................................................................................... 39

i

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ATTACHMENT A – District Court Order, 2:20-CR-00027-JNP,

    June 30, 2022

# TABLE OF AUTHORITIES

CASE                                                                                    PAGE(S)

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ........................................ 16

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ..................................... 23

*Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103 (1983) ..................... 14

*Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144 (2017) ....... 20

*Gonzales v. Carhart*, 550 U.S. 124 (2007) .............................................. 22

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ................................. 33

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ....................... 16

*Johnson v. United States*, 576 U.S. 591 (2015) ....... 8-12, 17-18, 23, 29, 33

*Kolender v. Lawson*, 461 U.S. 352 (1983) ....................................... 16, 23

*Miller v. California*, 413 U.S. 15 (1973) ............................................. 29-30

*Parker v. Levy*, 417 U.S. 733 (1974) ....................................................... 16

*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) ..................................... 10-11

*Skilling v. United States*, 561 U.S. 358 (2010) ............................ 24, 31-32

*United States v. Augustin*, 376 F.3d 135 (3d Cir. 2004) ................... 25-28

*United States v. Bennett*, 329 F.3d 769 (10th Cir. 2003) ....... 25-26, 28, 34

*United States v. Bowens*, 938 F.3d 790 (6th Cir. 2019) ......................... 28

*United States v. Bramer*, 832 F.3d 908 (8th Cir. 2016) .............. 11, 19, 25

*United States v. Cook*, 970 F.3d 866
    (7th Cir. 2020) ................................................. 18-20, 25, 28-29, 31

*United States v. Davis*, 139 S. Ct. 2319 (2019) ................................. 18-19

*United States v. Edwards*, 540 F.3d 1156 (10th Cir. 2008) ... 25, 34, 37-38

*United States v. Hasson*, 26 F.4th 610 (4th Cir. 2022) .......... 11, 19-20, 22

*United States v. Hosford*, 843 F.3d 161 (4th Cir. 2016) ........................ 21

*United States v. Jackson*, 280 F.3d 403 (4th Cir. 2002) ................... 26-27

*United States v. Lanier*, 520 U.S. 259 (1997) ............................ 24, 30, 32

*United States v. Lundy*, No. 20-6323, 2021 WL 5190899
    (6th Cir. Nov. 9, 2021) (unpublished) ........................................... 25

*United States v. McCowan*, 469 F.3d 386 (5th Cir. 2006) ..................... 38

*United States v. Monroe*, 233 F. App'x 879 (11th Cir. 2007) ................. 25

*United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29 (1963) .............. 16

*United States v. Patterson*, 431 F.3d 832 (5th Cir. 2005) ...................... 25

*United States v. Plotts*, 347 F.3d 873 (10th Cir. 2003) .......................... 13

*United States v. Purdy*, 264 F.3d 809 (9th Cir. 2001) ...................... 25-27

*United States v. Salerno*, 481 U.S. 739 (1987) ....................................... 21

*United States v. Sanders*, 43 F. App'x 249 (10th Cir. 2002) .............. 36-37

*United States v. Stupka*, 418 F. Supp. 3d 402 (N.D. Iowa 2019) ........... 21

*United States v. Turnbull*, 349 F.3d 558 (8th Cir. 2003) ....................... 30

*United States v. Williams*, 553 U.S. 285 (2008) .............. 22-24, 26, 29, 33

*United States v. Wilson*, 503 U.S. 329 (1992) ....................................... 26

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S.
    489 (1982) .............................................................................. 16, 23

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ......................... 32-33

STATUTES

18 U.S.C. § 922(g)(3) .......................................... 1-3, 6, 8, 11-12, 14-15, 39

iv

18 U.S.C. § 922(j) ................................................................... 1, 6

18 U.S.C. § 3731 ...................................................................... 2

21 U.S.C. § 841(a)(1) ............................................................... 6

28 U.S.C. § 1291 ...................................................................... 2

LEGISLATIVE HISTORY

114 Cong. Rec. 21,809-10 (1968) ........................................... 15

Firearm Owners' Protection Act, Pub. L. No. 99-308, § 102(5)(B), 100
    Stat. 449, 452 (1986) ....................................................... 15

Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213-1214, 1220-
    1221 ................................................................................. 14

H.R. Rep. No. 99-495 (1986) ................................................. 15

S. Rep. No. 88-1340 (1964) .................................................... 14

S. Rep. No. 89-1866 (1966) .................................................... 14

STATEMENT OF PRIOR AND RELATED APPEALS

None.

FED. R. APP. P. 26.1(B) STATEMENT

The United States is not aware of any organizational victims of the criminal activity in this case.

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellant/Cross-Appellee, | Nos. 22-4074/4076 |
| vs. | BRIEF FOR THE PLAINTIFF-APPELLANT/CROSS-APPELLEE |
| JONATHAN ALEXANDER MORALES-LOPEZ, | |
| Defendant-Appellee/Cross-Appellant. | |

## INTRODUCTION

Federal law makes it unlawful for "any person . . . who is an unlawful user of or addicted to any controlled substance" to possess a firearm. 18 U.S.C. § 922(g)(3). A jury convicted Jonathan Morales-Lopez ("Morales") of possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3), and possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). The district court granted a post-verdict motion to dismiss the section

922(g)(3) count, holding that the statute is unconstitutionally vague on its face and as applied to Morales.

The district court erred in striking down 18 U.S.C. § 922(g)(3) as unconstitutionally vague. First, the district court erred in allowing Morales to advance a facial vagueness challenge to section 922(g)(3). Second, the district court's conclusion that section 922(g)(3) is unconstitutionally vague on its face is erroneous and directly conflicts with published decisions from several circuits. Finally, the district court erred in finding that the statute was vague as applied to Morales's conduct, which fell squarely within the conduct prohibited by section 922(g)(3).

## JURISDICTIONAL STATEMENT

Because this case arises from a violation of federal law, the district court properly exercised jurisdiction pursuant to 18 U.S.C. § 3231. Pursuant to 18 U.S.C. § 3731 and 28 U.S.C. § 1291, this Court has jurisdiction over this government appeal challenging the district court's judgment of acquittal on the 18 U.S.C. § 922(g)(3) count. The Solicitor General has authorized this appeal.

## STATEMENT OF THE ISSUES

1.  Whether the district court erred in allowing Morales to advance a facial vagueness challenge to 18 U.S.C. § 922(g)(3) without first showing that the statute was vague as applied to himself.

2.  Whether 18 U.S.C. § 922(g)(3) is unconstitutionally vague on its face, where it provides fair notice of what is prohibited and presents no risk of arbitrary enforcement.

3.  Whether 18 U.S.C. § 922(g)(3) is unconstitutionally vague as applied to Morales, where Morales's conduct—including his admitted history of recent drug use, his carrying of a personal-use quantity of methamphetamine at the very time he was found with a gun, and his presence on the day of his arrest in a car with additional methamphetamine and a methamphetamine pipe evidencing recent use—fell squarely within the conduct prohibited by section 922(g)(3).

## STATEMENT OF THE CASE AND FACTS

### I.  Criminal conduct.

On January 10, 2020, Morales and Jose Amaya arrived at a Sportsman's Warehouse store in Midvale, Utah, in a Nissan Altima driven by Amaya.  Plaintiff-Appellant Appendix (Aplt. App.) at 252.

The two men entered the store, looked at a display case of used firearms, and then split up. *Id.* at 252-53. Amaya took some ammunition from a store shelf and put it in a bag he was carrying, then returned to the used gun case, forced it open, and removed four guns. *Id.* at 253. Meanwhile, Morales moved to the front of the store, apparently to act as a lookout. *Id*. at 253, 391.

Loss prevention employees saw these events on video and called the police. *Id.* at 253. Police arrived and arrested Morales outside the store, finding that he was carrying a .40 caliber pistol that Amaya had stolen from the same Sportsman's Warehouse five days earlier. *Id.*

After officers placed Morales in the back of a patrol car, they saw him "making some extreme movements." *Id.* at 465. Fearing that Morales had an additional weapon on him, the officers removed Morales from the patrol car to perform another search. *Id.* at 465-66. The officers found a baggie containing 5.7 grams of methamphetamine wedged into the backseat. *Id.* at 466, 525-26. An expert for the United States testified at trial that 5.7 grams of methamphetamine, without any other indicia of drug trafficking relative to the suspect such as scales, baggies, or cash, was indicative of personal use. *Id.* at 516.

4

Further, this amount of methamphetamine constituted about 28 user doses. *Id.*

Police also arrested Amaya, who was carrying the four stolen guns and a loaded 9mm handgun. *Id.* at 253. In the Nissan Altima in which Morales and Amaya had arrived at the store, police found 22 grams of methamphetamine near the driver's door and a pipe containing methamphetamine residue in the center console. *Id.* at 252-53, 487-90, 526.[1]

In March 2020, police detectives interviewed Morales about a separate incident on December 6, 2019, involving someone known as Jesus. *Id.* at 285-90 (Government Exhibit 22, Side-By-Side Spanish Transcription/Translation of March 2020 interview), 494-99. Morales said he had last bought methamphetamine from Jesus in late November or early December 2019. *Id.* at 286-87, 496. Morales bought a "20" from Jesus, which is a "common way of" referring to "$20 worth of drugs[.]" *Id.* at 289, 498. Morales admitted that he "would go" to a certain house "with everybody else" to "smoke meth," that he would buy

---

[1] The pipe did not yield any latent fingerprints. *Id.* at 505-07.

drugs from people on the street who offered drugs to him, and that he smoked marijuana with Jose Amaya during the December 6 incident in question. *Id.* at 286-88, 497-98. He also admitted that he didn't know what time he woke up during this December 6 incident because he had been smoking methamphetamine and hadn't slept for several days. *Id.* at 288, 497.

## II.   Trial proceedings and motion for judgment of acquittal.

A grand jury charged Morales with possession of a firearm by an unlawful drug user, in violation of 18 U.S.C. § 922(g)(3); two counts of possession of a stolen firearm, in violation of 18 U.S.C. § 922(j); and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *Id.* at 254. Prior to trial, the United States voluntarily dismissed one stolen-firearm count and the possession-with-intent-to-distribute count. *Id.* Morales went to trial on the section 922(g)(3) count and one of the stolen-firearm counts. *Id.*

At the close of the government's case, Morales moved for a judgment of acquittal on both counts and moved to "dismiss the unlawful user count because the statute is . . . vague on its face, and it's vague as applied to Mr. Morales and the facts presented here." *Id.* at

531. The district court deferred a decision on the motion until after the jury returned a verdict. *Id.* at 542-43.

When instructing the jury, the court defined an "unlawful user of a controlled substance" as "one who had been using a controlled substance on a regular and ongoing basis at the time he was found to be in possession of a firearm." *Id.* at 159, 271. The instruction clarified, however, that this did "not require that the individual was using a controlled substance or under the influence of a controlled substance at the precise time he possessed the firearm." *Id.* During deliberations, the jury sent a note asking if it could "get clarity on the time frame in which you would no longer be considered 'regular and ongoing basis [sic].'" *Id.* at 271. But before the court had formulated a response, the jury returned a guilty verdict on both counts. *Id.* at 271-72.

After the verdict, Morales filed renewed motions for a judgment of acquittal and to "dismiss" the section 922(g)(3) charge on the basis that it was unconstitutionally vague. *Id.* at 169-94. With regard to the latter claim, Morales argued that a facial challenge to the statute was appropriate, the statute was unconstitutionally vague on its face, and was also unconstitutionally vague as applied to the facts of his case. *Id.*

7

at 176-94.  In response, the United States argued that Morales could

not advance a facial vagueness challenge to the statute and was limited

to an as-applied challenge.  *Id.* at 202-09.  The United States also

argued that the statute was not facially unconstitutional, *id.* at 209-14,

and that the statute was constitutional as applied to the facts of

Morales's case.  *Id.* at 214-20.

### III.   District court order vacating 18 U.S.C. § 922(g)(3) conviction.

The district court granted Morales's motion in part, finding the

evidence sufficient on the stolen-firearm count, but holding that

section 922(g)(3) was unconstitutionally vague.  *Id.* at 252-78.  The

court first rejected the government's argument that Morales could bring

only an as-applied challenge.  *Id.* at 255-64.  In the district court's view,

*Johnson v. United States*, 576 U.S. 591 (2015), "left no doubt that a

criminal defendant no longer must show that a statute is

unconstitutional as applied to every possible set of facts in order to

succeed on a facial vagueness challenge."  *Id.* at 257.  Although the

government pointed to decisions from the Fourth, Seventh, and Eighth

Circuits that had rejected facial challenges to section 922(g)(3) after

*Johnson*, the district court said it was "not persuaded, nor bound, by

8

these cases." *Id.* at 260.  The court reasoned that, if it were true that "a criminal defendant must bring a successful as-applied challenge to a statute before asserting a facial one, it is unclear how one could ever bring a facial challenge" because a successful as-applied challenge would moot the facial challenge.  *Id.*

In finding the statute facially vague, the district court first pointed to the statute's failure to define "user."  *Id.* at 266-68.  The court concluded that the term must mean "something less than an addict" because section 922(g)(3) applies to anyone who is "an unlawful user of or addicted to any controlled substance."  *Id.* 267.  Thus, "the covered conduct falls somewhere in the chasm between a single use and an addict."  *Id.*  And the word "user," "without a modifying adjective, connotes neither regular nor irregular use; it only denotes use, rendering it impossible for ordinary persons to understand when the statute might apply to their level of drug use."  *Id.* at 267-68.

The court reasoned that the statute fails to give notice in a "second way" because it "fails to define the requisite temporal proximity between unlawful drug use and firearm possession."  *Id.* at 268.  In the court's view, "[j]udicial efforts to define the statute do little to allay the

9

confusion" because they "fail to provide any parameters as to what qualifies as 'regular,' 'consistent,' 'prolonged,' 'habitual,' or 'contemporaneous.'" *Id.* at 268-69.

Third, the district court concluded that "[t]hese judicial efforts to add an element to the statute illustrate the way in which § 922(g)(3) runs afoul of separation-of-powers principles." *Id.* at 270. In the court's view, providing a judicial gloss on the statute "'substitute[s] the judicial for the legislative department' and runs afoul of the Supreme Court's proclamation that 'Congress, rather than the executive or judicial branch, define[s] what conduct is sanctionable and what is not.'" *Id.* (quoting *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018)). The court had found it "tremendously difficult" to craft a jury instruction. *Id.* at 271. And the court said the instruction "apparently did little to help the jury understand what conduct § 922(g)(3) prohibits" given that the jury sent a note asking for clarification on the term "regular and ongoing basis." *Id.*

The district court said it was "not required to reach Mr. Morales's as-applied challenge given the facial unconstitutionality of the statute." *Id.* at 274. But it said that, "if forced to review the statute under an as-

10

applied challenge," it "would find that the statute is vague as applied to

Mr. Morales's conduct because the statute does not provide adequately

clear notice . . . that possessing a gun five weeks after using drugs is

prohibited conduct." *Id.* at 275. "Although the Government argued that

Mr. Morales's possession of methamphetamine [on the day of his gun

possession] is indicative of use," the court said that "the government

present[ed] no evidence that Mr. Morales actually used drugs at any

point in the five weeks leading up to his arrest." *Id.* at 274. Although it

indicated that it was not reaching the as-applied challenge, the district

court said in a footnote that "Mr. Morales has clearly demonstrated that

§ 922(g)(3) 'is vague as applied to his particular conduct' and that his

conduct is not 'clearly prohibited by a statute.'" *Id.* at 275 n.5 (quoting

*United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016) (per curiam),

and *United States v. Hasson*, 26 F.4th 610, 620 (4th Cir. 2022)). Thus,

in the court's view, Morales could raise a facial challenge even if he

were required to show the statute was vague as applied to himself.

Based on its finding that the statute was unconstitutional, the

court "vacate[d] [Morales's] conviction under 18 U.S.C. § 922(g)(3)." *Id.*

at 278.

Morales was sentenced on the stolen-firearm count on August 9,
2022, receiving a sentence of time-served, and cross-appealed from this
conviction. *See United States v. Morales-Lopez*, Case No. 22-4076, Aplt.
App. at 280-84. The Court consolidated the government's appeal and
Morales's cross-appeal for case management purposes. *See United
States v. Morales-Lopez*, Case Nos. 22-4074/4076, Order of August 15,
2022.

## SUMMARY OF THE ARGUMENT

First, the district court erred in allowing Morales to advance a
facial vagueness challenge to 18 U.S.C. § 922(g)(3) without first showing
that the statute was vague as applied to his conduct. The Supreme
Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), did
not alter the ordinary requirement that a defendant must show a
statute is vague as applied to himself before he can mount a facial
challenge.

Second, even if a facial vagueness challenge were available, it
would fail because 18 U.S.C. § 922(g)(3) provides fair notice of what
conduct is prohibited and presents no risk of arbitrary enforcement.
Section 922(g)(3), as interpreted by the federal courts, is not vague.

12

This Court and other circuits agree that the statute requires regular and habitual use at the time of the gun possession. And any uncertainty about the statute's application to a hypothetical defendant's conduct in a marginal case does not render the statute unconstitutionally vague on its face.

Finally, Morales cannot show that section 922(g)(3) is unconstitutionally vague as applied to his conduct. To the contrary, Morales's conduct—including his admitted history of recent drug use, his carrying of a personal-use quantity of methamphetamine at the very time he was found with a gun, and his presence on the day of his arrest in a car with additional methamphetamine and a methamphetamine pipe evidencing recent use—places him in the heartland of section 922(g)(3)'s prohibition.

## ARGUMENT

### I.    Standard of review.

The Court reviews challenges to the constitutionality of a statute de novo. *United States v. Plotts*, 347 F.3d 873, 877 (10th Cir. 2003). Statutes are presumed constitutional. *Id.*

## II.     Statutory history of 18 U.S.C. § 922(g)(3).

Federal law has long restricted firearm possession by certain

categories of individuals.  As relevant here, 18 U.S.C. § 922(g)(3)

prohibits any person who "is an unlawful user of or addicted to" a

controlled substance from possessing firearms.  Congress enacted that

provision's precursor as part of the Gun Control Act of 1968, Pub. L. No.

90-618, 82 Stat. 1213, following a multi-year inquiry into violent crime

that included "field investigation and public hearings," S. Rep. No. 88-

1340, at 1-2 (1964).

Although the Act was not intended to eliminate firearm ownership

"by law-abiding citizens for lawful purposes," 82 Stat. 1213-14, one of

the Act's aims was "to keep firearms out of the hands of presumptively

risky people," including felons, the mentally ill, fugitives from justice,

and unlawful drug users.  *Dickerson v. New Banner Inst., Inc.*, 460 U.S.

103, 112 n.6 (1983).  To address the rise in crime and gun violence and

to reduce "the likelihood that [firearms would] fall into the hands of the

lawless or those who might misuse them," S. Rep. No. 89-1866 at 1

(1966), Congress sought to restrict firearm access by "individuals who

by their previous conduct or mental condition or irresponsibility have

shown themselves incapable of handling a dangerous weapon in the midst of an open society," 114 Cong. Rec. 21,809-10 (1968) (statement of Rep. Tenzer).

The statute initially prohibited an individual who "is an unlawful user of or addicted to marihuana or any depressant or stimulant drug" from receiving firearms. 82 Stat. 1220-21. In 1986, Congress amended the statute to refer generally to unlawful users of "any controlled substance," as that term is defined by the Controlled Substances Act, *see* Firearm Owners' Protection Act, Pub. L. No. 99-308, § 102(5)(B), 100 Stat. 449, 452 (1986), in order to "modernize[ ] the prohibition" and capture hallucinogenic drugs and other substances that fell outside the then-existing definition, H.R. Rep. No. 99-495, at 23 (1986).

## III. The district court erred in allowing Morales to advance a facial vagueness challenge to 18 U.S.C. § 922(g)(3).

Morales cannot advance a facial vagueness challenge to section 922(g)(3) without first showing that the statute was vague as applied to his conduct. The Supreme Court's decision in *Johnson* did not alter the ordinary requirement that a defendant must show a statute is vague as applied to himself before he can mount a facial challenge.

15

The void-for-vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Outside the First Amendment context, however, it has long been the law that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (quotations omitted); *see Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 n.7 (1982); *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973) (collecting cases). Vague laws pose a unique concern in the First Amendment context because "vagueness may in itself deter constitutionally protected" conduct and chill speech. *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 36 (1963). Where First Amendment freedoms are not implicated, however, a challenger to whom "a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974).

16

In support of its contrary conclusion, the district court relied on the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), which the court believed abrogated the traditional rule that where a statute clearly proscribes the defendant's conduct, the defendant may not advance a facial vagueness challenge outside the First Amendment context. But *Johnson* did not abrogate that rule.

In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act of 1984 (ACCA) was impermissibly vague. *See* 576 U.S. at 595-606. That clause, however, presented unique vagueness concerns. The ACCA imposes an enhanced sentence on a defendant convicted of a firearms offense who has three or more prior convictions for either a "serious drug offense" or a "violent felony," and the statute's residual clause defines "violent felony" to include a crime that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Court had interpreted that clause to require application of a "categorical approach" under which courts were required to determine whether "an idealized ordinary case of the crime" carried a "'serious potential risk of physical injury.'" *Johnson*, 576 U.S. at 593, 604. Because the Court perceived

17

"uncertainty about how much risk it takes for a crime to qualify as a violent felony," and "[b]ecause 'the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect,'" the Court concluded that the residual clause "offer[ed] significantly less predictability than [a statute] that deals with the actual, not with an imaginary condition.'" *Id.* at 598, 604 (brackets and quotations omitted).

But the unique vagueness concerns present in *Johnson* are not implicated by section 922(g)(3). The statute does not gauge the riskiness of a defendant's conduct by comparison to hypothetical facts of an idealized case or call for courts to engage in any abstract analysis. Instead, section 922(g)(3) asks a court to apply the statutory prohibition to a defendant's own real-world conduct. *See United States v. Davis*, 139 S. Ct. 2319, 2327 (2019) ("[A] case-specific approach would avoid the vagueness problems that doomed the statute[ ] in *Johnson*"). And unlike "the ACCA's residual clause, there is no judicial history of courts struggling to appreciate what particular conduct Congress meant to reach." *United States v. Cook*, 970 F.3d 866, 877 (7th Cir. 2020). Rather, as discussed *infra*, courts have developed a consistent view of

the statute's reach. Section 922(g)(3) "presents a much more routine vagueness challenge that highlights some imprecision in the statutory language and posits uncertainty as to whether the statute might apply to certain hypothetical facts." *Cook*, 970 F.3d at 876. "But section 922(g)(3) does not call for the court to engage in any abstract analysis; it calls on the court to apply the statutory prohibition to a defendant's real-world conduct." *Id.* (citing *Davis*, 139 S. Ct. at 2327).

Three Circuits—the Fourth, Seventh, and Eighth—have so far considered whether *Johnson* permits a defendant whose conduct is clearly prohibited by section 922(g)(3) to raise a facial challenge to the statute. *See United States v. Hasson*, 26 F.4th 610, 620 (4th Cir. 2022) (rejecting a section 922(g)(3) vagueness claim after *Johnson*); *Cook*, 970 F.3d at 872-78 (same); *United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016) (per curiam) (same). And "[n]o court of appeals to consider the question has concluded" that *Johnson* "worked such a change." *Hasson*, 26 F.4th at 620. As the Seventh Circuit has explained, *Johnson* dealt with "a statute that is in key respects *sui generis*" and did not purport to "alter the general rule that a defendant whose conduct is clearly prohibited by a statute cannot be the one to make a

facial vagueness challenge." *Cook*, 970 F.3d at 876-77. Although Johnson addressed the "degree of vagueness a law must exhibit to be found facially unconstitutional," it did not "undermine the rule" concerning who may advance a facial challenge. *Hasson*, 26 F.4th at 619. And, since *Johnson*, the Supreme Court has continued to apply the rule that a plaintiff whose conduct is clearly proscribed cannot raise a facial vagueness claim. *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1151-52 (2017) (holding that the plaintiffs could not raise a successful vagueness claim because the challenged law clearly proscribed their intended speech). As the Fourth Circuit has explained, "the Court's application of the rule after *Johnson*—in the speech context no less, where 'a heightened vagueness standard applies,'— [is] dispositive that the *Johnson* Court did not silently overrule its precedents prohibiting vagueness challenges by those whose conduct a statute clearly prohibits." *Hasson*, 26 F.4th at 620 (citing *Humanitarian L. Project*, 561 U.S. at 20).

Although it recognized that every court of appeals to consider the question has "continu[ed] to impose the requirement that a defendant first show that [922(g)(3)] is vague as applied to the facts of her case

before she may mount a facial challenge[,]" the district court concluded

it was "not persuaded, nor bound, by these cases."  Aplt. App. at 260.

The court was concerned about the "logical quandary" presented by

requiring a defendant to bring a successful as-applied challenge to a

statute before asserting a facial one, as "it is unclear how one could ever

bring a facial challenge."  *Id.*[2]

The district court's concern is misplaced.  As the Supreme Court

has cautioned, "[t]he fact that [a criminal statute] might operate

unconstitutionally under some conceivable set of circumstances is

insufficient to render it wholly invalid."  *United States v. Salerno*, 481

U.S. 739, 745 (1987).  Where "a law clearly prohibits a defendant's

conduct, the defendant cannot challenge, and a court cannot examine,

whether the law may be vague for other hypothetical defendants."

*United States v. Hosford*, 843 F.3d 161, 170 (4th Cir. 2016).  Indeed, the

---

[2] In discussing this supposed quandary, the district court referenced the decision in *United States v. Stupka*, 418 F. Supp. 3d 402, 407 (N.D. Iowa 2019).  Aplt. App. at 261.  But the court in *Stupka*, while noting some "confusion" about when a facial void-for-vagueness challenge is allowed, concluded that the defendant could not mount a facial challenge to section 922(g)(3) without first showing that the law was unconstitutionally vague as applied to her conduct.  *Stupka*, 418 F. Supp. 3d at 406-13.

district court's belief that a defendant should be able to bring a facial

vagueness challenge without showing that the statute is vague as

applied to the facts of his case is at odds with the purpose of the

vagueness doctrine, which "require[s] that a criminal statute 'provide a

person of ordinary intelligence fair notice of what is prohibited' and not

be 'so standardless that it authorizes or encourages seriously

discriminatory enforcement.'" *Hasson*, 26 F.4th at 619 (quoting *United*

*States v. Williams*, 553 U.S. 285, 304 (2008)). But "[w]hen the

challenged statute clearly proscribes a defendant's conduct, neither of

these rationales is implicated. It would untether the vagueness

doctrine from its moorings to permit a facial vagueness challenge in

such a case." *Id.* And permitting a defendant whose conduct is clearly

proscribed to facially challenge a statute would threaten "the limited

nature of judicial power" to deciding only cases and controversies

properly brought before the court. *Id.* "Respect for [a court's]

circumscribed role is one reason 'as-applied challenges are the basic

building blocks of constitutional adjudication.'" *Id.* (quoting *Gonzales v.*

*Carhart*, 550 U.S. 124, 168 (2007)).

22

As in *Johnson*, in certain exceptional circumstances, not present here, a criminal statute may be struck down as facially vague even where it has some valid applications. *See Johnson*, 576 U.S. at 596-602; *supra* at 17-19. And in certain cases, the Supreme Court has sustained a facial challenge seemingly on the basis that statute was so vague as to preclude clear application to any set of facts. *See, e.g., Kolender*, 461 U.S. at 358 (statute "contains no standard" and vests "virtually complete discretion" in police); *City of Chicago v. Morales*, 527 U.S. 41, 71 (1999) (Breyer, J., concurring) (ordinance unconstitutional "because the policeman enjoys too much discretion in every case"). Those cases, however, provide no basis for rejecting the Court's repeated admonition that one "who engages in some conduct that is clearly proscribed" cannot complain of a law's vagueness "as applied to the conduct of others." *Village of Hoffman Estates*, 455 U.S. at 495.

## IV. The statute is facially constitutional.

Even if Morales could facially challenge section 922(g)(3) on vagueness grounds, the statute is not so indeterminate that it "fails to provide a person of ordinary intelligence fair notice of what is prohibited." *Williams*, 553 U.S. at 304.

23

The Due Process Clause bars enforcement of a criminal statute on vagueness grounds only if the statute "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* A statute is not void for vagueness simply because its application may be unclear at the margins, *id.* at 306, or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306. The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

In rejecting an as-applied vagueness challenge to section 922(g)(3), this Court recognized that "[s]uch a challenge will fail where the government has introduced sufficient evidence of a temporal nexus

24

between the drug use and firearm possession." *United States v. Edwards*, 540 F.3d 1156, 1162 (10th Cir. 2008). Indeed, every court to have considered the question has rejected a vagueness challenge to section 922(g)(3). *See United States v. Patterson*, 431 F.3d 832, 836 (5th Cir. 2005); *United States v. Lundy*, No. 20-6323, 2021 WL 5190899, at *5-*6 (6th Cir. Nov. 9, 2021) (unpublished); *Cook*, 970 F.3d at 872-78; *Bramer*, 832 F.3d at 909; *United States v. Purdy*, 264 F.3d 809, 811-13 (9th Cir. 2001); *United States v. Monroe*, 233 F. App'x 879, 881 (11th Cir. 2007) (per curiam).[3]

Contrary to the district court's analysis, the statute has a settled legal meaning: it requires a defendant to "have engaged in regular use" of drugs "over a period of time proximate to or contemporaneous with the possession of the firearm." *United States v. Augustin*, 376 F.3d 135, 138-39 (3d Cir. 2004). The courts of appeals, including this Court, have had no difficulty construing section 922(g)(3)'s reach. *See United States v. Bennett*, 329 F.3d 769, 776–77 (10th Cir. 2003) ("the government

---

[3] These cases have all involved as-applied vagueness challenges to section 922(g)(3). As noted *supra*, no court has so far permitted a defendant to raise a facial vagueness challenge to the statute.

must show a defendant's drug use was contemporaneous with his

firearm possession"); *see also United States v. Jackson*, 280 F.3d 403,

406 (4th Cir. 2002) (upholding district court finding that the

prosecution must establish a "pattern of use and recency of use");

*Purdy*, 264 F.3d at 812-13 ("[T]o sustain a conviction under § 922(g)(3),

the government must prove . . . that the defendant took drugs with

regularity, over an extended period of time, and contemporaneously

with his . . . possession of a firearm.").

The statute is not so indeterminate that it "fails to provide a

person of ordinary intelligence fair notice of what is prohibited."

*Williams*, 553 U.S. at 304. First, the statute's use of the present tense

"is" indicates that Congress intended to preclude only current drug

users from possessing firearms. *See United States v. Wilson*, 503 U.S.

329, 333 (1992) ("Congress' use of a verb tense is significant in

construing statutes"). By requiring an individual to be *presently* an

unlawful user, "Congress intended the statute to cover unlawful drug

use at or about the time of the possession of the firearm" but not use

that is "remote in time or an isolated occurrence." *Augustin*, 376 F.3d

at 138.

26

Second, the statute focuses on the defendant's status as a drug "user" concurrent with his firearm possession, rather than on the defendant's use of a drug. Accordingly, "Section 922(g)(3) does not forbid possession of a firearm *while unlawfully using* a controlled substance," but rather "prohibits *unlawful users* of controlled substances (and those addicted to such substances) from possessing firearms." *Jackson*, 280 F.3d at 406 (emphasis in original). The government is not required "to prove that [the defendant] was smoking marijuana at the very same time that he possessed the firearm." *Augustin*, 376 F.3d at 138 n.5.

Third, to be categorized as an unlawful user and not simply one who has, at some point, used a controlled substance, a defendant must use drugs "with some regularity"—that is, "to have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm." *Id.* at 139 & n.6. "[A] common sense meaning of the phrase clearly includes" drug use that is "consistent, prolonged, and contemporaneous with" the firearm possession. *Purdy*, 264 F.3d at 812 (quotations omitted). A "single use" of a controlled

substance, by contrast, without more, is insufficient to show that a defendant is an unlawful user. *Augustin*, 376 F.3d at 138-39.

The district court found section 922(g)(3) vague on its face because the statute fails to specify who qualifies as a "user" of controlled substances and fails to define the requisite temporal proximity. *See* Aplt. App. at 266-69. But the courts of appeals have interpreted "user" to mean one who engages in the "regular and habitual" use of a controlled substance. The circuits agree that the statute requires regular and habitual use at the time of the gun possession. *See, e.g., Cook*, 970 F.3d at 874 ("regularly or habitually ingest[ing] a controlled substance" where the use is "contemporaneous with the defendant's possession of a gun"); *United States v. Bowens*, 938 F.3d 790 (6th Cir. 2019) (consuming drugs "with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm"); *Augustin*, 376 F.3d at 139 ("regular use over a period of time proximate to or contemporaneous with the possession of the firearm"); *Bennett*, 329 F.3d at 778 ("regular and ongoing use of [controlled substances] during the same time period as [the] firearm possession").

Nor was the district court correct that section 922(g)(3)'s prohibition is based on characteristics that are not objectively ascertainable. Aplt. App. at 272-75. As discussed, courts have expressed no difficulty determining whether, in a particular case, a defendant regularly used drugs contemporaneous with firearm possession. That determination is a "clear question[ ] of fact." *Williams*, 553 U.S. at 306. Although one could imagine "hypothetical scenarios which present close questions," there is "no doubt as to the essence of what the statute forbids: the possession of a firearm by one who is engaged in the regular and ongoing use of a controlled substance other than as prescribed by a doctor." *Cook*, 970 F.3d at 877. This standard is not "so vague that it fails to give ordinary people fair notice" or "so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595. Indeed, this is the kind of standard that we expect juries to be able to apply. For example, *Johnson* suggests that a jury can evaluate the risk of injury associated with real-world criminal conduct. *See id.* at 603-04. And juries are required to apply "contemporary community standards" for purposes of determining what is obscene material subject to prosecution. *See Miller v. California*, 413 U.S. 15,

29

24 (1973). It should therefore not be unreasonable to ask a jury to apply the regular and habitual standard to determine who is a controlled substance user.

Quoting from an Eighth Circuit case, the district court concluded that the statutory language on its own was impermissibly vague, and expressed concern that "judicial efforts to add an element to the statute illustrate the way in which § 922(g)(3) runs afoul of separation-of-powers principles." Aplt. App. at 269-70 (quoting *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003) ("The term 'unlawful user' is not otherwise defined in the statute, but courts generally agree the law runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular drug use.")). But the required temporal nexus flows naturally from the statute's use of the present tense and its focus on the defendant's status as an unlawful user. *See supra* at 26-27. Applying that language poses no vagueness concern.

And even if that temporal nexus is considered a judicial gloss on the statute, "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute." *Lanier*, 520 U.S. at 266. As

30

the Seventh Circuit has recognized, the reach of section 922(g)(3) is limited "by two key requirements: (1) regularity of drug use (2) that is sufficiently contemporaneous with the possession of a firearm. That these are limits imposed on the offense by the judiciary rather than the face of the statute does not render them invalid." *Cook*, 970 F.3d at 878 (internal citations omitted).

Further, the district court's separation-of-powers concerns, Aplt. App. at 269-71, conflict with an equally if not more compelling separation-of-powers principle: the obligation of courts, if possible, "to construe, not condemn, Congress' enactments." *Skilling*, 561 U.S. at 403. For example, the district court expressed frustration in crafting an appropriate jury instruction in light of its "desire not to substitute its own judgment for that of the legislature, the sparsity of the statutory language, and the lack of any statutory definition of terms." Aplt. App. at 271. But the district court got its separation-of-powers analysis backward: instead of striking down the statute in an attempt to avoid legislating, the court should have applied the principle of constitutional avoidance. As the Supreme Court has explained, cases "'paring down' federal statutes to avoid constitutional shoals are legion" and, in such

31

cases, "the Court does not legislate, but instead respects the legislature, by preserving a statute through a limiting interpretation." *Skilling*, 561 U.S. at 409, n.43 (citing *Lanier*, 520 U.S. at 267-268, n.6).

The district court was wrong to reject the consistent and workable limiting interpretation developed by the courts of appeals. A statute must be upheld if it is susceptible to a particular interpretation that is not vague, *id*. at 423-24 (Scalia, J., concurring)—an observation that accurately describes courts' efforts to construe section 922(g)(3).

The district court's conclusion that the statute is facially unconstitutional was premised, in large part, on its concern that it is difficult to define precisely when a person becomes or ceases to be an unlawful user. *See* Aplt. App. at 269-72. But, as discussed, section 922(g)(3), as interpreted by the federal courts, is not vague. And the possible existence of marginal cases in which it might be difficult to determine whether a specific individual was or continued to be an unlawful drug user at the time of firearm possession does not mean that the statute is unconstitutionally vague. "[P]erfect clarity and precise guidance have never been required," *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989), and "the mere fact that close cases can be

envisioned" does not "render[ ] a statute vague," *Williams*, 553 U.S. at

305; *see Johnson*, 576 U.S. at 604 ("[T]he law is full of instances where a

man's fate depends on his estimating rightly . . . some matter of

degree." (quotations omitted)).  Applying a "qualitative standard" to a

defendant's "real-world conduct," as section 922(g)(3) does, generally

does not render a statute vague.  *Johnson*, 576 U.S. at 603-04.  And,

acknowledging that "enforcement requires the exercise of some degree

of police judgment," there is no credible basis to conclude that any such

discretion risks arbitrary enforcement of this statute.  *See Grayned v.

City of Rockford*, 408 U.S. 104, 114 (1972).

## V.    The statute is constitutional as applied to Morales's conduct.

Finally, the district court erred to the extent it found section

922(g)(3) vague as applied to Morales.  *See* Aplt. App. at 274-75 & n.5.[4]

In so holding, the district court was influenced by its (erroneous)

conclusion that the statute was vague on its face.  *See id.* (the court

---

[4] Although some of the court's statements suggest that it was not
reaching the as-applied challenge, other statements suggest that it was.
*See id*.  To the extent the district court found the statute vague as
applied, it was incorrect.

concluding that "analyzing the statute in light of the facts of Morales's case further demonstrates the unworkably vague nature of § 922(g)(3)"). Section 922(g)(3) clearly applied to Morales based on his admitted history of recent drug use and the fact that he was carrying personal-use quantities of methamphetamine at the very time he was found with a gun.

This Court has rejected as-applied challenges to section 922(g)(3) where there is "sufficient evidence of a temporal nexus between the drug use and firearm possession," *Edwards*, 540 F.3d at 1162, and where the defendant engaged in "regular and ongoing use of marijuana and methamphetamine during the same time period as his firearm possession," *Bennett*, 329 F.3d at 778. "The government does not need to show the defendant was under the influence of an illegal drug at the exact same time he possessed a firearm." *Id.* at 777.

Section 922(g)(3) provided fair notice to Morales that his conduct was prohibited. The district court observed that the government had no direct evidence that Morales was a "user" of controlled substances at the time of the Sportman's Warehouse incident. Aplt. App. at 274. But the government introduced evidence of Morales's apparently habitual

drug use approximately one month earlier. During that time, in addition to purchasing methamphetamine from Jesus, Morales admitted that he "would go" to a certain house "with everybody else" to "smoke meth," that he would buy drugs from people on the street who offered drugs to him, and that he smoked marijuana with Jose Amaya. *Id.* at 286-88, 497-98. He also admitted that he didn't know what time he woke up during an incident on December 6 because he had been smoking methamphetamine and had not slept for several days. *Id.* at 288, 497.

Moreover, Morales was found in possession of a personal-use quantity of methamphetamine at the very time of his arrest. After officers removed Morales from the patrol car in which he had been placed, they found a baggie containing 5.7 grams of methamphetamine wedged into the backseat. *Id.* at 465-66, 525-26. An expert for the United States testified at trial that 5.7 grams of methamphetamine, without any other indicia of drug trafficking relative to the suspect, such as scales, baggies, or cash, was indicative of personal use. *Id.* at 516. Further, this amount of methamphetamine constituted about 28 user doses. *Id.*

Additionally, Morales came to the Sportsman's Warehouse in a car, driven by Amaya, which was found to contain an additional 22.7 grams of methamphetamine and a methamphetamine pipe, in the center console and in plain view, with methamphetamine residue in it. *Id.* at 487-90, 526.  The pipe, with its methamphetamine residue and location in plain view in the center console, evidenced recent methamphetamine use, and Morales admitted to using drugs with Amaya in the past.  *See id.* at 286-88, 497-98.

Morales's carrying of a personal-use quantity of methamphetamine at his arrest, as well as his presence in a car with its additional methamphetamine and methamphetamine pipe evidencing recent use, strongly suggests that Morales's drug use was ongoing. These facts, combined with Morales's purchase of methamphetamine five weeks earlier from Jesus and his other statements concerning his drug use during that time, were sufficient to establish that he was a regular drug user at the time of the Sportsman's Warehouse incident on January 10, 2020.  *See, e.g., United States v. Sanders*, 43 F. App'x 249, 256 (10th Cir. 2002) (rejecting as-applied challenge to statute where government introduced evidence that defendant used and possessed

36

drugs three months prior to discovery of firearm in his residence, police

found marijuana and drug paraphernalia in his residence at the time

firearm was discovered, and he was chronic drug user in months

following the firearm's discovery).  In fact, as instructed, the jury was

required to find that Morales "had been using a controlled substance on

a regular and ongoing basis *at the time*."  Aplt. App. at 271 (emphasis

added).  The district court never held that the evidence was insufficient

to support such a finding, and it did not attempt to reconcile the jury's

finding with its conclusion that Morales was not a user at the time of

his gun possession.

The district court faulted the government for only introducing

evidence of Morales's possession, and not use, of methamphetamine on

the offense date.  *Id.* at 274.  But the government was not required to

introduce specific instances of repeated drug use proximate to Morales's

possession of the firearm, as long as the evidence "supported a

reasonable inference that Defendant was a user of controlled substances

during all relevant times."  *Edwards*, 540 F.3d at 1162 (holding

"specific, direct evidence pinpointing precise dates on which Defendant

used drugs" was not required where the evidence "supported a

37

reasonable inference that Defendant was a user of controlled substances during all relevant times"); *United States v. McCowan*, 469 F.3d 386, 392 (5th Cir. 2006) (finding evidence sufficient to affirm conviction under section 922(g)(3) where the firearm possession occurred in October 2004 and the evidence at trial showed that the defendant used marijuana daily until August 2004, admitted recreational cocaine use, and tested positive for marijuana use in April 2005). Particularly when coupled with his admission to methamphetamine use a month earlier, his possession of methamphetamine upon his arrest strongly supported the inference that he was a habitual user.

In short, section 922(g)(3) asks whether the defendant possessed a firearm while a regular and habitual user of a controlled substance. Here, the government introduced evidence that Morales was a regular and habitual drug user at the time he possessed the firearm, putting Morales in the heartland of prohibited conduct under section 922(g)(3). The statute is therefore constitutional as applied to Morales's conduct.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's judgment of acquittal on the 18 U.S.C. § 922(g)(3) count and remand for resentencing on both counts of conviction.

## STATEMENT REGARDING ORAL ARGUMENT

Because of the complexity and importance of the issues presented, counsel believes oral argument may be helpful to the Court.

RESPECTFULLY SUBMITTED this **26th** day of October, 2022.

TRINA A. HIGGINS
United States Attorney

*/s/ Jennifer P. Williams*
JENNIFER P. WILLIAMS
Assistant United States Attorney
Utah Bar No. 15942
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 325-3260
Jennifer.williams2@usdoj.gov

39

### CERTIFICATE OF COMPLIANCE

My brief was prepared in a proportionally spaced typeface and contains 7,434 words.  I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

/s/ Jennifer P. Williams
JENNIFER P. WILLIAMS
Assistant United States Attorney
Utah Bar No. 15942
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 325-3260
Jennifer.williams2@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of the United States

Attorney's Office, and an electronic copy via the ECF system of the

foregoing BRIEF FOR THE PLAINTFF-APPELLANT/CROSS-

APPELLEE was served to all parties named below, this **26th** day of

October, 2022.

SCOTT KEITH WILSON
Federal Public Defender
BRETTA PIRIE
JESSICA STENGEL
Utah Federal Public Defender Office
46 W. Broadway, Suite 110
Salt Lake City, Utah 84101


*/s/ Libby Oberg*
LIBBY OBERG
Legal Administrative Specialist