## Case Number 22-4074

In the United States Court of Appeals
for the Tenth Circuit

---

**United States of America,**
Plaintiff-Appellant,

v.

**Jonathan Alexander Morales-Lopez**
Defendant-Appellee.

---

On Appeal from the United States District Court
for the District of Utah
The Honorable Jill N. Parrish, District Judge
D.C. No. 2:20-CR-00027-JNP

---

## Appellee's Response Brief

---

Office of the Federal Public Defender
46 W. Broadway, Suite 110
Salt Lake City, UT 84101
Tel: (801) 524-4010
Fax: (801) 524-4060
Email: Jessica_Stengel@fd.org

Scott Keith Wilson
Federal Public Defender

Jessica Stengel
Assistant Federal Public Defender

Bretta Pirie
Assistant Federal Public Defender

Attorneys for Appellant
Jonathan Alexander Morales-Lopez

Oral Argument is Requested

February 28, 2023.

i

# Table of Contents

Table of Contents ........................................................................... ii

Prior and Related Appeals ............................................................ iii

Table of Authorities .................................................................... iv

Statement of the Issues ................................................................. 1

Statement of the Case .................................................................. 1

    Facts ....................................................................................... 2

    Procedure .............................................................................. 4

Summary of the Argument ............................................................ 5

Argument ...................................................................................... 6

    1.  Propriety of a Facial Challenge. .......................................... 7

        A.  *Johnson* does not apply a *sui generis* vagueness rule. ....................... 10

        B.  Principles and Purposes of a Constitutional Vagueness Challenge... 16

    2.  The language of Section 922(g)(3) is unconstitutionally vague. ............ 26

        A.  Statutory Language........................................................... 26

        B.  Second Amendment Context........................................... 36

    3.    Section 922 (g)(3) is unconstitutionally vague as applied to Morales. 49

Conclusion .................................................................................. 53

Statement Regarding Oral Argument ......................................... 55

Certificate of Compliance............................................................ 56

Certificate of Service and Digital Submissions .............................. 57

Attachment A – Judgment in a Criminal Case Dated August 9, 2022 .......... 58

## Prior and Related Appeals

Mr. Morales filed a cross-appeal in this case, which was voluntarily dismissed on February 28, 2023. *See United States v. Morales-Lopez,* Case No. 22-4076. He knows of no other prior or related appeals.

# Table of Authorities

## Federal Cases

*Borden v. United States,*
141 S.Ct. 1817 (2021) ................................................................. 15

*Cantwell v. Connecticut,*
310 U.S. 296 (1940) ..................................................................... 38

*Carnes v. United States,*
2022 WL 4485280 (2022) ............................................................. 30

*Coates v. Cincinnati,*
402 U.S. 611 (1971) ..................................................................... 44

*Connally v. Gen. Const. Co.,*
269 U.S. 385 (1926) ................................................................. 23, 25

*D.L.S. v. Utah,*
374 F.3d 971 (10th Cir. 2004) ..................................................... 48

*Expressions Hair Design v. Scheiderman,*
581 U.S. 37 (2017) ....................................................................... 14

*Grayned v. City of Rockford,*
408 U.S. 104 (1972) ......................................................... 18, 36, 46

*Gooding v. Wilson,*
405 U.S. 518 (1972) ..................................................................... 43

*Hill v. Colorado,*
530 U.S. 703, 732 (2000) ............................................................. 51

*Lanzetta v. New Jersey,*
306 U.S. 451 (1939) ......................................................... 21, 22, 23, 24

*Johnson v. United States,*
576 U.S. 591 (2015) ......................................... 5, 7-8, 10, 12, 13, 20, 34

*Jordan v. Pugh,*
425 F.3d 820 (10th Cir.2005) ....................................................... 51

*Kachalsky v. Cacace,*
817 F. Supp. 2d 235 (S.D.N.Y. 2011) ....................................... 38-39

*Kachalsky v. Cnty. of Westchester,*
701 F.3d 81 (2d Cir. 2012) ..................................................... 38-39

*Kent v. Dulles,*
357 U.S. 116 (1958) .................................................................... 37

*Kolender v. Lawson,*
461 U.S. 352 (1983) ............................................. 18, 22, 23, 24, 37

*Natl Assn for Advancement of Colored People v. Button,*
371 U.S. 415 (1963) ............................................................ 38, 43-44

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
142 S. Ct. 2111 (2022) ...................................................... 14, 40, 41

*Papachristou v. City of Jacksonville,*
405 U.S. 156 (1972) ......................................................... 23, 24, 37

*Sessions v. Dimaya*
138 S.Ct. 1204 (2018) ....................................................... 8, 18, 27

*Skilling v. United States,*
561 U.S. 358, 405 (2010) ........................................................... 27

*Smith v. California,*
361 U.S. 147 (1959) .................................................................... 44

*Thornhill v. Alabama*
310 U.S. 88 (1940) ................................................................. 37-38

*United States v. Augustin,*
376 F.3d 135 (3d Cir. 2004) ........................................... 28, 30, 33

*United States v. Barton,*
633 F.3d 168 (3d Cir. 2011) ................................................. 38, 39

*United States v. Bennett,*
329 F. 3d 769 (10th Cir. 2003) ................................................. 29

*United States v. Bowens,*
938 F.3d 790 (6th Cir. 2019) ............................................... 30, 32

*United States v. Bramer,*
832 F.3d 908 (8th Cir. 2016) .................................................... 13

*United States v. Caparotta,*

676 F.3d 213 (1st Cir. 2012) .................................................. 30, 32, 49, 51

*United States v. Carnes,*
    22 F.4th 743, (8th Cir. 2022) ................................................. 31, 34


*United States v. Clanton,*
    515 Fed Appx 826 (11th Cir. 2013) ..................................... 31, 33

*United States v. Cook,*
    970 F.3d 866 (7th Cir. 2020) ................................................ 12-13

*United States v. Davis,*
    139 S.Ct. 2319 (2019) ...................................................... 8, 16, 17

*United States v. Decastro,*
    682 F.3d 160 (2d Cir. 2012) ................................................. 38, 39

*United States v. Edmonds,*
    348 F.3d 950 (11th Cir. 2003) .................................................. 31

*United States v. Harrison,*
    CR-22-00328-PRW (W.D.Okla February 3, 2023).................................... 48

*United States v. Hasson,*
    26 F.4th 610 (4th Cir. 2022) ........................................... 13, 31, 33

*United States v. Hernandez-Calvillo,*
    39 F.4th 1297 (10th Cir. 2022) .............................................. 27

*United States v. Jackson,*
    280 F.3d 403 (4th Cir. 2002) .................................................. 29

*United States v. L. Cohen Grocery Co.,*
    255 U.S. 81 (1921) ...................................................... 18, 20, 24

*United States v. Masciandaro,*
    638 F.3d 458 (4th Cir. 2011) .............................................. 38, 39

*United States v. Nevarez,*
    251 F.3d 28 (2d Cir. 2001) ................................................ 31, 32

*United States v. Purdy,*
    264 F.3d 809 (9th Cir. 2001) ......................................... 29, 30, 32

*United States v. Reese,*

92 U.S. 214, (1876) ..................................................................... 18

*United States v. Stevens,*
   559 U.S. 460, 481 (2010) ...................................................... 27

*United States v. Turnbull,*
   349 F.3d 558 (8th Cir. 2003) ............................................... 31-32

*United States v. Williams,*
   553 U.S. 285  (2008) .......................................................... 35, 42

*United States v. Williams,*
   616 F.3d 685 (7th Cir. 2010) ................................................... 39

*United States v. Yancey,*
   621 F.3d 681 (7th Cir. 2010) .............................................. 30, 32

*United States v. Yepez,*
   456 Fed Appx 52 (2d Cir. 2012) ......................................... 31, 32

*Vill. of Hoffman Estates v. Flipside,*
   455 U.S. 489 (1982) ................................................................ 8

*Winters v. New York,*
   333 U.S. 507 (1948) .............................................................. 46

## Federal Statutes

18 U.S.C. § 922 ................................................................. *passim*

18 U.S.C. § 924 ............................................................. 7, 8, 10

18 U.S.C. § 1112 ................................................................... 35

## Other

Natalie Fertig, Mona Zhang and Paul Demko, *Nearly half of Americans reside in states where marijuana is legal,* POLITICO, Nov. 9, 2022, at https://www.politico.com/news/2022/11/09/half-americans-state-marijuana-legal-00065987 .............................................................46

Claire Hansen, Horus Alas, and Elliott Davis Jr., *Where is Marijuana Legal? A Guide to Marijuana Legalization,* U.S. NEWS AND WORLD REPORT, Dec. 14, 2022, at https://www.usnews.com/news/ best-states/articles/where-is-marijuana-legal-a-guide-to-marijuana-legalization........................................45

A Review of the President's Fiscal Year 2023 Funding Request for the U.S. Department of Justice, April 26, 2022, at 1:22:00, available at https://www.appropriations.senate.gov/hearings/a-review-of-the-presidents-fiscal-year-2023-funding-request-for-the-us-department-of-justice; *see also Attorney General Garland Reconfirms the DOJ's Hands-Off Approach Toward Federal Marijuana Prosecution,* May 3 2022, at https://www.jdsupra.com/legalnews/attorney-general-garland-reconfirms-the-9983989/ ................................................................................................46

**Statement of the Issues**

1.  Whether the district court was correct in considering whether 18 U.S.C. § 922(g)(3) is unconstitutionally vague on its face without regard to whether it is unconstitutional as applied to the facts of this case.

2.  Whether 18 U.S.C. § 922(g)(3) is unconstitutionally vague on its face in criminalizing the possession of a firearm by a "user" of a controlled substance because the term "user" has no readily understood definition that would allow one to predict what frequency or recency of drug use qualifies one as a user.

3.  Whether application of § 922(g)(3) is unconstitutional as applied to Morales' case, where the definition of "user" gives a factfinder no standard for evaluating whether evidence of actual use 5 weeks prior to the firearm possession along with evidence giving rise to a possible inference of future use at the time of possession should be sufficient to create the status of "user."

**Statement of the Case**

1

**Facts**

On January 10, 2020, Morales and Jose Amaya, a co-defendant, arrived at a Sportsman's Warehouse in Amaya's Nissan Altima.  I, 252.[1]  Once inside, Amaya stole guns and ammunition.  *Id*., 253.  During that time, Morales made his way to the front of the store, at which time store employees alerted police.  *Id*.  After he left the store, Morales was arrested. I, 253.  The officer who handcuffed him "systematically search[ed] him," first while Morales was "lying on the ground" and then again when Morales was on his feet.  II, 155-56.  While Morales was on the ground, the officer found a firearm on Morales, a gun that someone else had stolen a few days earlier.  *Id*.  The officer got Morales to his feet and searched him again and finding nothing, put Morales into the back seat of the patrol car.  II, 160.  The officer did not inspect the back seat of his patrol car prior to putting Morales inside.  *Id*.  Officers later searched the patrol car and found approximately 5.7 grams of methamphetamine in the back seat.  I, 253.  The United States' expert testified that it was their "opinion that the 5.7 grams in and of itself, … it's a user amount, a user amount of meth."  II, 225.

Officers also searched Amaya's car finding ammunition, a safe containing ammunition, and an empty ammunition box.  I, 253.  Officers also

---

[1] All citations to the record on appeal will take the form of " I, 49," with " I" referring to the volume of the record on appeal and "49" being the page number.  Pagination references are based on the number in green that appears across the top of the pages with the appellate court case number.

recovered 22 grams of meth from the driver's door panel and a glass pipe with meth residue from the center console. II, 199-201. Officers also found a butane lighter in the driver's door panel, next to the bag of meth. *Id*. The United States' expert admitted that a bag of meth, standing alone, doesn't indicate *when* a person used drugs, *when* the person obtained the drugs, nor can it serve as evidence of the person's usage history or patterns. II, 231.

On March 24, 2020, officers interviewed Morales while he was in custody. I, 254; 285-289. The interview focused on Morales' drug use on December 6, 2019. II, 208. Morales admitted to buying meth "[l]ike in November, like the beginning of December" from a man named Jesus. I, 286. He saw Jesus "on the street, there at Hillside Park" and bought "the twenty from him."[2] I, 287, 289. Morales was unequivocal that he saw Jesus, not Jose, on Thursday, at "Hillside Park, by [his] house." I, 288, 289.

Though they had been talking about Morales buying drugs from Jesus, one officer began talking about Facebook and text messages saying that "it happened at almost five in the morning." I, 288. Morales "was sleeping" at the time as he "had not slept for several days." *Id*. Morales clarified that he "had been smoking meth" and "didn't even know what time it was" when he

---

[2] An officer who was not qualified as an expert testified that a" [a] 20 is a common way of – a weight of drug, $20 worth of drugs, basically." II, 207.

awoke.  *Id.*  When asked if he had been in touch with Amaya that day, [3]

Morales responded "Man, just when we left."  *Id.*  Amaya asked if Morales

wanted to smoke some pot, which they did "on the way" to someone's mom's

house.  *Id.*  There was no evidence that Morales used drugs "at any point in

the five weeks leading up to his arrest."  I, 274.

**Procedure**

Morales was charged with violating 18 U.S.C. § 922(g)(3), possession of

a firearm by an unlawful user or addict of controlled substances, and 18

U.S.C. § 922(j), possession of a stolen firearm.  At the close of the case and

before it was submitted to the jury, Morales moved for a directed verdict on

both counts; the court reserved the decision and allowed the case to go to the

jury.  II, 238-251.

The jury was instructed, in relevant part, that an "unlawful user of a

controlled substance is one who has been using a controlled substance on a

regular and ongoing basis at the time he was found to be in possession of a

firearm."  I, 159, 271.  During deliberations, the jury submitted the following

question:

> In reference to "regular and ongoing basis" can we get clarity on the
> time frame in which you would no longer be considered "regular and
> ongoing basis" [sic]?

---

[3] The selected portion of the transcript that was Government's Exhibit 22 at trial discusses Morales'
drug use on Friday, December 6, 2019.  II, 203.  Officers failed to particularize what day Morales and
Amaya communicated via Facebook and text messages.

I, 271.  The district court and counsel for both parties "spent significant time" trying to craft "an appropriate response to the jury's question with no success[.]"  *Id.*  The jury ultimately returned a guilty verdict on both counts.  I, 168.

 Morales renewed his motion for judgement of acquittal and moved to dismiss the § 922(g)(3) charge on the grounds it is unconstitutionally vague, both facially and as applied.  I, 169-75, 176-94, 237-251.

The district court denied Morales' motion for acquittal, but granted his motion to dismiss the § 922(g)(3) charge on the grounds that the statute is unconstitutionally vague.  I, 252-278.

## Summary of the Argument

In *Johnson v. United States*, 576 U.S. 591 (2015), the Supreme Court held that a statute may be unconstitutionally vague even if there are some applications of the statute which are clear.  By doing so, it eliminated the basis for requiring defendants to make an as-applied challenge to criminal statutes before arguing whether the statute is facially valid, as a statute which is unconstitutional on its face is a nullity and cannot be applied to anyone.

Section 922(g)(3), imposing criminal penalties on one who is an unlawful "user" of controlled substances who possesses a firearm, is unconstitutionally vague, as the word "user" has no clear meaning: it implies

5

some sort of pattern of drug use, but offers no standard for determining whether a particular person's use will qualify, and the words courts have used to clarify the statute, such as "regular," "prolonged," "ongoing," don't actually clarify the term.  The statute accordingly provides no reasonable notice as to when someone who has used a controlled substance at some point may possess a firearm, and violates separation of powers principles as it falls to either prosecutors or judicial decisionmakers to decide without standards whether a particular person qualifies.

In addition, § 922(g)(3) is unconstitutional as applied to the facts of this case, as one who used illegal drugs five weeks prior to possessing a firearm would not reasonably be expected to understand that he is a "user" under this statute. Any application to Morales under the facts of this case would only be based on such a broad reading of "user" that it has essentially no reasonable limitation.

## Argument

The district court held that 18 U.S.C. § 922(g)(3) is unconstitutional on its face as a violation of the Fifth Amendment's Due Process clause, which requires that laws, especially criminal prohibitions, be written with sufficient clarity to allow for readily understood and predictable application.  The district court found that the language of this statute is unconstitutionally vague because it "fails to give ordinary people fair notice of what conduct it

prohibits and because it invites courts, rather than the legislature, to decide what constitutes a crime." I, 265-66.

In its appeal, the United States asserts that the district court erred in allowing Morales to assert a claim of facial invalidity, disagreeing with the court's reasoning that recent Supreme Court decisions have clarified facial challenges may be made and finding that the statute is unconstitutional on its face. Br., 12. In making these arguments, however, the United States fails to acknowledge the reach of the Supreme Court's recent jurisprudence clarifying a defendant's ability to argue facial invalidity, and misapplies the standards for determining whether a statute is unconstitutionally vague.

**1. Propriety of a Facial Challenge.**

The district court considered whether Morales should be required to prove that the statute is vague as applied to his conduct before being allowed to bring a facial challenge to the statute. It held that recent Supreme Court cases clarified that a defendant need not make a showing that the statute was unconstitutional as applied to the facts of their case. I, 256-60. The district court pointed to *Johnson* the decision in which the Court held that the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B) (ACCA) was unconstitutional on its face, even though there may be applications of ACCA which are sufficiently clear as to avoid a vagueness problem. I, 257 (citing *Johnson*, 576 U.S. at 602). The district court then reasoned that since a

7

statue could be found to be vague on its face even if there are constitutional

applications, it makes no sense to require a defendant first make an as-

applied challenge: a statute which is vague on its face is unconstitutional in

all applications.

> From this it follows that a criminal defendant need not show the
> statute in question is vague as applied to the particular facts of his case
> in order to mount a vagueness challenge—if it is vague, then it is vague
> even if the defendant's conduct appears to fall within its reach.

*Id.*, 259. The requirement that a defendant first make a vagueness argument

as to their particular case is based entirely on a view which *Johnson*

disavowed: that a statute cannot be unconstitutionally vague on its face if a

particular application seems clear enough. *Johnson*, 576 U.S. at 602

("although statements in some of our opinions could be read to suggest

otherwise, our *holdings* squarely contradict the theory that a a vague

provision is constitutional merely because there is some conduct that clearly

falls within the provision's grasp"). If, under a prior assumption, a court

could not find a statute unconstitutional on its face if there were applications

of the law as to which it is not unreasonably vague, then it makes sense to

require a defendant to challenge the law as to the facts of his case: if the

statute is not vague as to his facts, it perforce cannot be held to be vague as

to all applications. *See Vill. of Hoffman Estates v. Flipside,* 455 U.S. 489,

495, 497 (1982) (a criminal statute is not unconstitutionally vague on its face

unless it is "impermissibly vague in all of its applications." )  But after the Supreme Court's clear disavowal of the all-applications principle, there is no reasonable basis for requiring a defendant to bring an as-applied challenge first: a statue which is unconstitutional on its face is a nullity which cannot be applied to any set of facts, and a defendant should not be precluded from making this argument.  This basic principle was reaffirmed and applied by the Court in *Sessions v. Dimaya*, 138 S.Ct. 1204, 1214 n.3 (2018) and *United States v. Davis*, 139 S.Ct. 2319 (2019).

The United States fails to address this core point made by the district court.  While it acknowledges that *Johnson* and the cases following it disavowed the all-applications requirement, it fails to address the implications of this disavowal for any continued reliance on the as-applied challenge requirement.  The district court's reasoning on this point is compelling: if the rule underlying the as-applied challenge requirement is disavowed, there is no basis for continuing to require an as-applied challenge.

Instead of addressing this reasoning, the United States asserts two things: **first**, that the Supreme Court's decisions in *Johnson*, *Dimaya*, and *Davis* are somehow *sui generis* because of the specific type of vagueness at issue in those cases (Br., 18); and **second**, that allowing vagueness challenges without a prior as applied challenge is at odds with the purposes of the vagueness doctrine. (Br., 22)  These arguments fail to apply the actual

ruling in *Johnson* and don't account for the full purposes of the vagueness doctrine.

## A. *Johnson* does not apply a *sui generis* vagueness rule.

The United States argues that the district court in this case erred in finding that *Johnson*, *Dimaya*, and *Davis* clarified the Court's general jurisprudence on vagueness doctrine, asserting that the statutes at issue in those cases presented a unique set of reasons for being unconstitutionally vague.  Br., 22-23.  However, the Supreme Court did not even imply, much less hold, that it was doing anything other than applying general principles of the vagueness doctrine to the cases. The particular types of arguments raised as to the statutes at issue in those cases has nothing to do with the issue of who can raise a facial vagueness argument in the first place.

In *Johnson*, the Court considered the constitutionality of the "residual clause" of ACCA, which imposed enhanced penalties for those who had previously been convicted of a crime which "involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).  The decision whether a particular prior crime qualifies for this enhancement required courts to apply the "categorical approach," which involves evaluating the risks associated with the elements of the prior offense. The abstract nature of this analysis was a large part of the Court's

holding that the residual clause was unconstitutionally vague.  *Johnson*, 576 U.S. at 596-602.

It is true that ACCA's residual clause required courts to undertake an unusual mode of analysis involving hypothetical evaluations of various types of offenses, and this analysis contributed to the Court's finding that ACCA's residual clause is unconstitutional on its face.  But those are merely the specifics of the vagueness argument as it relates to ACCA; it has nothing to do with whether a defendant must show that the statute is unconstitutional as applied to him before bringing a facial challenge.  The "why" is different from the "who": the particular statutory construction issues that determine why a statute is or isn't impermissibly vague is different than the initial question of whether a defendant can bring the challenge at all.

The United States argues that "the unique vagueness concerns present in *Johnson* are not implicated by section 922(g)(3)."  Br., 18.  But the United States offers no reason why the fact that a challenged statue uses a particular mode of analysis should be at all relevant to the issue of whether a defendant can make a facial vagueness argument at all.  Nothing about the Court's consideration of the specific vagueness issues raised in *Johnson* would have precluded an as-applied consideration of the vagueness argument – if that were required up front.  The Court certainly could have first required Johnson to make a showing that the residual clause was

unconstitutional, as applied, to his prior sawed-off shotgun conviction, but it did not do that.  Nor did it limit its all-application approach to only *Johnson*.

Thrice over, the Supreme Court in *Johnson*, *Dimaya*, and *Davis* considered facial vagueness claims without requiring the defendants in those cases to first make a showing of as-applied vagueness, and it is difficult to see why that treatment should not be dispositive in this case.  Nowhere in *Johnson*, *Dimaya*, or *Davis* does the Court hint that it is applying a different underlying standard for asserting a facial vagueness claim because of the supposed uniqueness of the categorical approach.  Rather, the Court broadly characterizes its vagueness jurisprudence, most notably in response to a claim by Justice Alito in dissent that an unconstitutionally vague statute must be vague in all applications: the Court responded that such a requirement has not been applied in the past, and if a statute is unconstitutionally vague, it's unconstitutional as to any application of that statute, regardless of the facts of the particular case.  *Johnson*, 576 U.S. at 603 ("if we hold a statute to be vague, it is vague in all its applications (and never mind the reality).").  This statement of law has nothing to do with the underlying reasons for finding the residual clause unconstitutional.

The United States relies heavily on the Seventh Circuit's analysis in *United States v. Cook*, 970 F.3d 866 (7th Cir. 2020), which precluded a defendant from making a facial challenge based on the idea that *Johnson* was

12

in some way unique.  In *Cook*, the court acknowledged that *Johnson* rejects any suggestion in prior cases that a facial challenge cannot be brought if there is some category or type of conduct clearly within the statute's prohibition.  *Id.,* at 876 ("*Johnson* puts to rest the notion-found in any number of pre-*Johnson* cases that a litigant must show that the statute in question is vague in all of its application in order to successfully mount a facial challenge.").  But the *Cook* court refused to allow the defendant to raise a facial challenge, believing *Johnson's* vagueness reasoning was unique in that it considered the effects of the "categorical approach."  *Id*.  However, *Cook* nowhere explains why the specific arguments in *Johnson* about *why* a statute is vague should govern the issue of whether a defendant can make such arguments.  Instead, *Cook* precludes the defendant from bringing a facial challenge seemingly because it believes the challenge fails on its merits.  *See Id*. at 877 (disallowing facial challenge because there was an "essence" of what the statute precludes).  This makes no logical sense, as the question of who can bring a challenge is a separate issue entirely from the resolution of the merits of the challenge.  In *United States v. Bramer*, 832 F.3d 908 (8th Cir. 2016)(per curiam), the court rules similarly, but merely cites to *Cook*, without any additional analysis.

The other circuit court decision cited by the United States (and considered by the district court below), *United States v. Hasson*, 26 F.4th 610

(4th Cir. 2022), is to similar effect: it acknowledges that *Johnson* clarified the law regarding facial vagueness challenges to allow them even when there are scenarios to which the law clearly applies. In maintaining the rule that a defendant must first successfully make an as-applied challenge, *Hasson* fails to explain why that rule should have continued effect despite Supreme Court precedent to the contrary, instead claiming that "*Johnson* and *Dimaya* did not purport to jettison the latter rule." *Id.,* 26 F. 4th at 619. But it is difficult to see how one can reasonably claim that the Supreme Court didn't jettison that rule, when those cases explicitly discard the basis for it, and then do not apply it.

The United States also cites to *Hasson* to argue that the Supreme Court after *Johnson* applied the prerequisite as-applied challenge in *Expressions Hair Design v. Scheiderman*, 581 U.S. 37, 48-49 (2017), Br., 20. But *Expressions Hair Design* does not support this assertion at all, and indeed, by implication, stands for the opposite point. In that case, the Court went out of its way to make clear that the plaintiff was not making a facial challenge at all. "Before us, however, the merchants have disclaimed a facial challenge, assuring us that theirs is an as-applied challenge only." 581 U.S. at 44. One cannot claim that this case stands for the proposition that the Supreme Court continues to apply the as-applied requirement for facial

14

challenges when the plaintiff in that case explicitly disclaims the idea that they are making a facial challenge.[4]

Moreover, in ruling on the purely as-applied challenge in that case, the Court actually implies that the issue would have been much different if it had been presented as a facial challenge. "*Given the way the merchants have presented their case*, their vagueness challenge gives us little pause." *Id.* at 48 (emphasis added). By implication, the Court is saying that if it were dealing with a facial challenge, the issue would be more difficult: even though there is clearly no as-applied challenge based on the facts of the plaintiff's situation, the court would still have to undertake a broader analysis of the statutory language.

Further, consideration of a facial challenge is not a violation of the cases and controversies requirement for judicial action, as the United States asserts. Br., 22 (quoting *Hasson*). Certainly the Supreme Court in *Johnson*, *Dimaya*, and *Davis* did not think so. Morales is making a legal argument that the statute he is being prosecuted under is facially invalid as a violation

---

[4] In *303 Creative LLC v. Elenis,* a case raising a pre-enforcement, First Amendment challenge to Colorado's Anti-Discrimination Act, this court rejected a due process vagueness challenge because the complaining party's "speech [was] clearly proscribed[.]" 6 F.4th 1160, 1190 (10th Cir. 2021 cert. granted in part, 212 L. Ed. 2d 6, 142 S. Ct. 1106 (2022). For that reason, the court found that post-*Johnson,* the standard set forth by the Supreme Court in *Expressions Hair Design* controlled: "a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim." *Id.,* (citing *Expressions Hair Design*, 581 U.S. at 48). The grant of certiorari was limited to the question of whether applying a public-accomodation law to compel an artist to speak or stay silent violates the Free Speech Clause of the First Amendment.

of due process and separation of powers and therefore cannot be constitutionally applied to *anyone's* conduct.  A facial challenge, by its nature, is a challenge to particular statutory language, and anyone brought to answer under such a statute must have the right to make the argument that the statute is unconstitutional on its face.  *See* I, 263-264 (noting Justice Thomas' concurrence in *Borden v. United States,* 141 S.Ct. 1817 (2021))**,** confirms that *Johnson* did away with the requirement that a vagueness challenge goes beyond the specifics of a defendant's particular circumstances).  Declaring that a statute is a nullity as to any application at all because of vague language is either something that a court can do or it isn't.  And the Supreme Court has held that it is.

## B.  Principles and Purposes of a Constitutional Vagueness Challenge.

In *Davis*, the Court clearly describes the principles underlying vagueness challenges.

> In our constitutional order, **a vague law is no law at all**. Only the people's elected representatives in Congress have the power to write new federal criminal laws. And when Congress exercises that power, it has to write statutes that give ordinary people fair warning about what the law demands of them. **Vague laws transgress both of those constitutional requirements.** They hand off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges, and they leave people with no sure way to know what consequences will attach to their conduct. When Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again.

*Davis*, 139 S.Ct at 2323 (emphasis added). This description makes clear that a vagueness challenge to a statute requires consideration of its validity as applied to anyone: if a statute is unconstitutionally vague, it is a nullity: "a vague law is no law at all." As such, it makes no sense to first require a defendant to make an as-applied challenge, since under the argument, the statute is a nullity which cannot be constitutionally applied to anyone, regardless of the facts of a defendant's particular case. This has to be the starting point: why should the court impose a gatekeeping rule regarding who may bring a facial challenge, when the challenge, if successful, would preclude its application to anyone?

The United States argues that allowing a defendant to make a facial challenge without an underlying as-applied challenge "is at odds with the purpose of the vagueness doctrine." Br., 22. But in making this argument, the United States doesn't explain why this is so: as quoted above, when a statute is vague on its face, it is a nullity, and whatever the underlying purpose for the doctrine, anyone affected by a statute which is a nullity should be able to point that out. As to the specific purposes of the vagueness doctrine – due process notice and separation of powers only the notice issue has arguably anything to do with a particular defendant's situation. It may be true that if a defendant's conduct is plainly within the clear scope of the statute, they can hardly be heard to complain that they were not on notice

17

that their conduct might run afoul of the law, no matter how vague it might be in different circumstances.  However, fair notice is but one purpose for the rule, and the Supreme Court has made it clear that the constitutional limits on vagueness are also based on fundamental questions of separation of powers.

As quoted above, vague laws "hand off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges." *Davis*, 139 S.Ct. at 2323.  The vagueness doctrine thus imposes a structural limitation on Congress' ability to delegate its lawmaking power, as it requires Congress to legislate with sufficient clarity that judges and prosecutors aren't forced to take on the legislative function by rewriting vague language (judges) or arbitrarily choosing defendants (prosecutors).  "Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide."  *Id*. at 2325 (citing *Kolender v. Lawson*, 461 U.S. 352, 357-358, and n.7 (1983); *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89-91, (1921); *United States v. Reese*, 92 U.S. 214, (1876)).  Indeed, as between the two purposes, it is the structural, separation of powers concern which is the most critical.  "[T]he *more important* aspect of vagueness doctrine is not actual notice, but … the requirement that a legislature establish minimal guidelines to govern law enforcement and keep

18

the separate branches within their proper spheres." *Dimaya*, 138 S.Ct. at 1228 (Gorsuch, J., concurring) (internal quotations omitted). [5]

Thus, imposing a requirement that a defendant first show that the statute failed to provide him fair notice serves to undermine the court's ability to address the most important purpose for the vagueness doctrine: preserving separation of powers. Even when a particular defendant might be expected to understand his own conduct is prohibited, this fact has no bearing whatsoever on whether the statute itself violates separation of powers. Indeed, if a defendant's understanding that his conduct would be prohibited is only based on a judicial interpretation of a vague statute (as is generally true with regard to 922(g)(3)), the problem of fair notice is inextricably entwined with the separation of powers problem. In its argument regarding the purposes of the vagueness doctrine, the United States simply ignores the separation of powers aspect of the vagueness doctrine. *See* Br., 22.

Finally, the district court below correctly observed that requiring a defendant make an as-applied challenge before raising a facial challenge

---

[5] Arbitrary enforcement is but a one piece of the overarching separation of powers principles. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). Thus, while one case might focus on the problem of judicial legislation and another on arbitrary enforcement by police or prosecutors, each is one side of the separation of powers problem. Congress is not permitted to delegate legislative authority to the judicial or executive branch.

makes no logical sense: if you impose such a requirement, there will never be a facial challenge, as once an as-applied challenge is upheld, there is no longer any issue to resolve. I, 260. Especially in light of the critical structural purposes of the vagueness doctrine, this logical problem makes clear the danger of imposing that gatekeeping rule: a law which is vague on its face as a constitutionally improper delegation from the legislature will never be evaluated and corrected, because the gatekeeping rule essentially precludes all facial challenges. The United States offers no argument to resolve this quandary, instead merely reasserting the supposed requirement that creates it. Br., 21.

And this gatekeeping requirement, often cited to preclude vagueness challenges when a defendant's conduct appears clearly within the scope of the language, is inconsistently applied. *Johnson*, *Dimaya*, and *Davis* are certainly recent examples of this, but even before *Johnson*, courts regularly permitted facial challenges to vague laws without a hint that an as-applied challenge is a necessary precursor. Even in older cases, the refusal to impose a gatekeeping requirement was explicitly related to the twin purposes of the vagueness doctrine, notice and separation of powers.

Thus, if the United States were correct that the law invariably requires an as-applied challenge before a facial one, one would expect a discussion of sugar prices to decide *Cohen Grocery*, 255 U.S. 81 (1921). After all, the first

count charged that $10.07 for 50 pounds of sugar was an "unjust and unreasonable rate," as prohibited by statute, and the second count that $19.50 for 100 pounds was also unjust and unreasonable. *Cohen Grocery*, 255 U.S. at 86. If charging these prices was "clearly proscribed" by the statute, according to the United States, then *Cohen Grocery* should have first determined what was simply too much for sugar. There are prices that everyone could agree are highway robbery: "one can easily envision rates so high that they are unreasonable by any measure." *Johnson* 576 U.S. at 603. Since it is possible to imagine conduct the statute clearly proscribes, under the United States' theory, *Cohen Grocery* should determine whether the defendants' conduct fell within some clearly defined core. This not the analytic route *Cohen Grocery* takes, however.

Instead of determining whether the statute clearly applies to the rates charged, *Cohen Grocery* resolves the matter by determining if the statutory denunciation of unjust and unreasonable rates "constituted a fixing by Congress of an ascertainable standard of guilt ... adequate to inform persons accused ... of the nature and cause of the accusation against them." 255 U.S. at 89. Without consideration of sugar pricing, *Cohen Grocery* finds the statute's vagueness so clear "as to render elaboration on the subject wholly unnecessary." *Id.* The statute confines itself to general terms, "forbid[ding] no specific or definite act." *Id.* Since there is no specific act

21

forbidden, the statute authorizes a sweeping investigation "the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against." *Id*. *Cohen* thus authorizes precisely the analysis the United States claims is forbidden: a facial challenge without any effort to consider an as-applied challenge.

*Cohen Grocery* is hardly alone in permitting facial challenges without prior, successful as-applied challenges. Indeed, *Lanzetta v. New Jersey,* 306 U.S. 451, 453 (1939) explicitly rejects such a requirement: "If on its face the challenged provision is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it. It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression." *Id.*, at 453 (citations omitted). The United States insists that a person whose conduct is plainly covered by a statutory prohibition can't complain that the statute is vague as to the conduct of others; *Lanzetta* reverses the United States' analysis, holding that a statute vague on its face can't be saved by particular charges that might fall within its ambit.

Due process requires the statute provide fair notice, and doesn't allow particular charges to provide limitations the statute does not. The fair notice required by due process explains this order of operation:

22

> That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

*Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926). *See also Lanzetta*, 306 U.S. at 453 ("No one may be required… to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.") Moreover, criminal statutes require greater clarity than civil ones: "where a statute imposes criminal penalties, the standard of certainty is higher." *Kolender*, 461 U.S. at 358 p. 8.

The statute in *Lanzetta* fails to provide fair notice, for crucial terms have meanings "numerous and varied," do not have a settled common-law meaning, and are subject to numerous ambiguities and uncertainties. *Lanzetta*, 306 U.S. at 454, 458. Rather than considering whether the defendants' acts clearly made them gangsters under any definition the statute would permit, *Lanzetta* finds "the terms [the statute] employs to indicate what it purports to denounce are so vague, indefinite and uncertain that it must be condemned as repugnant to the due process clause of the Fourteenth Amendment." *Id*. at 458.

*Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972), reaffirms the twin difficulties of vague criminal statutes: lack of fair notice and violation of separation powers. *See also Kolender,* 461 U.S. at 357 ("the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."). *Papachristou* doesn't begin with an as-applied analysis before proceeding to a facial one; it considers the breadth of the law and concludes that it "cannot be squared with our constitutional standards and is plainly unconstitutional." *Papachristou*, 405 U.S. at 171. Indeed, the case's procedural posture points to an analytic choice. *Papachristou* resolves five consolidated cases with eight defendants, and while the facts of each arrest are briefly recited, *Papachristou* makes no effort to determine whether or not Jacksonville's vagrancy statute clearly applies to each defendant's actions before deciding that the statute is void for vagueness. The point isn't whether "prowling by auto" or being "vagabonds" or loitering while a common thief or disorderly loitering fall within some clear core of prohibited conduct. The point is that the statute, on its face, fails to give fair warning to anyone and gives unfettered discretion to the police.

The United States' brief offers a fleeting explanation of a few of these cases, suggesting that "in certain cases, the Supreme Court has sustained a

facial challenge seemingly on the basis that that [the] statute was so vague as to preclude clear application to any set of facts." Br., 23. There are several difficulties with this analysis. To begin with, it is inaccurate. As *Johnson* points out, *Cohen Grocery* held the statute unconstitutionally vague even though there were clearly some sugar prices that everyone would agree violate the terms of the statute.

Moreover, while the United States sees in the cases a general rule that one whose conduct is "clearly" captured by a statute cannot complain of its vagueness, Br., 16, it has no explanation for the cases where the Supreme Court plainly ignored any such limitation even prior to *Johnson*. *See Kolender,* 461 U.S. at 358 n.8*, Papachristou,* 405 U.S. at 162-63*, Cohen Grocery* 255 U.S. at 89*, Lanzetta* 306 U.S. at 453*, Connally,* 269 U.S. at 393-395. Cases that don't fit this rule are therefore exceptions, which are "seemingly" explained by some greater degree of vagueness that makes a facial challenge permissible. Br., 23. But the Supreme Court has nowhere articulated such a rule, and the United States offers no standards for applying it. Regardless of any inconsistency in Supreme Court jurisprudence on this issue prior to *Johnson*, the Court's recent cases on vagueness repeatedly make clear that a statute may be unconstitutional even if there are some clear applications of it because of the dangers such vagueness poses both for notice and separation of powers. This principle undermines any

basis for requiring an up-front, as-applied challenge, and the Court has repeatedly considered vagueness arguments without first requiring a defendant to make such an argument.

Finally, given that the district court properly held that 18 U.S.C. § 922(g)(3) is unconstitutionally vague as applied to Morales, see infra, p. 48-52, he has satisfied even the United States' standard for considering a facial challenge, and this court should proceed to consider whether the statute is unconstitutional on its face.

## 2.  The language of Section 922(g)(3) is unconstitutionally vague.

The district court correctly held that § 922(g)(3) is facially unconstitutional because it fails to give ordinary people notice of what it prohibits, and because it invites courts, rather than the legislature, to decide what constitutes a crime.  I, 266-74.

## A.  Statutory Language

As the district court noted, when the statute refers to a "user" it must mean something other than an addict, since that status is listed in the statute separately.  The word "user" could therefore mean anything ranging from one who once sampled an illegal drug many years ago to someone who has been daily using such drugs for many years (although not an addict).  The problem is that the word "user" itself does not differentiate these situations.  The district court was correct to observe that the dictionary

26

definitions of "user" provides no help, because the term is indeterminate by its nature and defined in the dictionary only in a circular manner: a user is one who uses.  I, 267.  If a court tries to narrow the scope of what the word "user" means, it cannot merely choose from among available definitions.  It has to add words to the statute to judicially narrow its meaning to some reasonable limitation that the court invents.  The problem, of course, is that the universe of available limiting glosses upon the word "user" is broad indeed.  Some possible glosses benefit from being definite and specific: "daily user" or "yearly user" have the advantage of specificity, but of course no court would apply such a gloss because although it would give the statute needed clarity, it clearly usurps the legislative function.  So instead of modifying "user" with something that gives real notice, the courts have added modifying words that are hardly less vague than the word they seek to clarify.

It is true that in cases where a court has "serious ... doubts" about a statute's constitutionality, it "may impose a limiting construction on [the] statute" that avoids the constitutional problem. *United States v. Hernandez-Calvillo*, 39 F.4th 1297, 1302 (10th Cir. 2022) (citing *United States v. Stevens*, 559 U.S. 460, 481 (2010)).  *See also Skilling v. United States*, 561 U.S. 358, 405 (2010)("It has long been our practice, however, before striking a federal staute as impermissibly vague, to consider whether the prescription is amenable to a limiting instruction").  The United States argues that such a

27

course of action should have been employed by the district court.  Br., 31.

However, a limiting construction is only appropriate if the statute is "readily

susceptible" to one; a court may not "rewrite a law to conform it to

constitutional requirements." *Hernandez-Calvillo,* 39 F.4th at 1302.  In this

case, the district court reviewed the language of the statute and tried

diligently to craft a definition that would limit the statute's reach and avoid

the constitutional problem.  I, 270-71.  But as the district court correctly

found, the only way to save Section 922(g)(3) was for the "court[], rather than

the legislature, to decide what constitutes a crime," an act it could not

undertake.  *Id.* at 265-66, 270; *Dimaya*, 138 S. Ct. at 1212.  Because only a

court's unlawful intrusion into the legislative function by narrowing and

limiting the statute could save it, a limiting construction cannot save Section

922(g)(3).

Nevertheless, the United States asserts that courts have added

interpretive glosses upon the statute to solve the problem, arguing that "the

statute has a settled legal meaning: "it requires a defendant to 'have engaged

in regular use' of drugs 'over a period of time proximate to or

contemporaneous with the possession of the firearm.'"  Br., 25 (quoting

*United States v. Augustin*, 376 F.3d 135, 138-39 (3d Cir. 2004)).  There are

several things to note about this assertion.  Initially, this more elaborate

description of the status prohibited by § 922(g)(3) is not really more specific

than "user." What is "regular?" Daily? Weekly? Annually? "Over a period of time?" What period? A week, a month, a year, a decade? And what is "proximate?" Again, an entirely undefined period of time which provides no notice whatsoever. If one ingests his cannabis edible on a Saturday, at what point can he legally obtain a firearm? On Monday? A week later? A month? The limiting language used to gloss the word "user" is no more definite than the word itself. How often does one have to have a beer in order to be considered a "drinker?" How many days does one have to be a teetotaller in order to no longer be one?

"User" is a status based upon an act. One "uses" a drug on a particular occasion, and if a factfinder is going to describe a person as a user, it must employ some inner sense of a relationship between an act and a status that is essentially a feeling about language. How many uses, over what period of time, are required in order to change one who has used a drug into a user of a drug? At what point does that status begin or end? We simply don't know, and the language used by courts to describe this relationship, i.e., over time, regular, prolonged, etc., are not helpful, as they are simply vague ways to describe the general considerations underlying our individual feelings about the relationship between the act and the status.

Further, contrary to the United States' assertion, the quoted definition from *Augustin* is far from "settled." In fact, the United States immediately

quotes two other courts' attempts to explain "user" employing entirely different language that is equally unhelpful to anyone who is actually seeking to conform their behavior to the law.  Br., 25-26 (quoting *United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002) and *United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001)).[6]  These various glosses on the word "user" in the case law are thus both varied and inconsistent, and fail entirely in their effort to helpfully define what is being prohibited.  Indeed, the Justice Department itself has acknowledged elsewhere that courts of appeals do not consistently define "the term 'unlawful user.'"  *Carnes v. United States*, Brief for the United States in Opposition, 2022 WL 4485280, *9.

Some circuits use the word "regular" in attempting to define "unlawful user."

| *United States v. Caparotta*, 676 F.3d 213, 216 (**1st** Cir. 2012) | an 'unlawful user' is one who engages in (1) **regular use** (2) over a long period of time |
| *United States v. Augustin*, 376 F.3d 135, 138-9 (**3rd** Cir. 2004) | to be an unlawful user, one needed to have engaged in **regular use** over a period of time |

---

[6] The United States includes a quote from *United States v. Bennett*, 329 F. 3d 769, 776-77 (10th Cir. 2003) ("the government must show a defendant's drug use was contemporaneous with his firearm possession").  If the court in *Bennett* had held that the government was actually required to prove that a defendant was using drugs with one hand while holding a gun in the other, such might be a clear standard and would make the statute's application predictable.  But that is not what the court was holding: it merely held that the *status* of being a "user" had to be contemporaneous, which is entirely unhelpful.

| | |
|---|---|
| *United States v. Bowens*, 938 F.3d 790, 793 (**6th** Cir. 2019) | the government must prove that the defendant took drugs with **regularity**, over an extended period of time |
| *United States v. Purdy*, 264 F.3d 809, 813 (**9th** Cir. 2001) | the government must prove the defendant took drugs with **regularity**, over an extended period of time |
| *United States v. Yancey*, 621 F.3d 681, 682 (**7th Cir.** 2010) (per curiam) | an "unlawful user" is someone…who regularly ingests controlled substances in a manner except as prescribed by a physician |

Other circuits describe a user as being "actively engaged:"

| | |
|---|---|
| *United States v. Carnes*, 22 F.4th 743, 748 (**8th Cir. 2022**) | the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct |
| *United States v. Clanton*, 515 Fed Appx 826, 830 (**11th** Cir. 2013) | actively engaged in the use of a controlled substance |
| *United States v. Yepez*, 456 Fed Appx 52, 54 (**2d Cir**. 2012) | engaged in a pattern of use of controlled substances |

Some of the circuits also define 'unlawful user' as "ongoing" drug use:

| | |
|---|---|
| *United States v. Edmonds*, 348 F.3d 950, 953 (**11th Cir.** 2003) (per curiam) | a defendant's use must be ongoing |
| *United States v. Nevarez,* 251 F.3d 28, 30 (**2d Cir**. 2001) (per curiam) | a defendant's unlawful use of a controlled substance must be ongoing |

31

There are other words used to describe a user, none of which are any less vague. *See Hassan*, 26 F.4th 616 (the defendant's drug use was sufficiently consistent, prolonged).

In addition to the vagueness about how often a drug must be used to constitute "user" status, courts have inconsistently described the requisite temporal nexus between illicit drug use and possessing a firearm. This indeterminacy arises out of the vague definition of "user," as that status has no clear boundaries. Within what time frame must a person have consumed controlled substances (or narcotics) before or after possessing the weapon? Just as with 'unlawful user,' courts have conjured up a temporal nexus element in an effort to avoid vagueness problems. *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003), *vacated,* 543 U.S. 1099 (2005), *reinstated,* 414 F.3d 942 (8th Cir. 2005) (per curiam) ("[t]he term 'unlawful user' is not otherwise defined in the statute, but courts generally agree the law runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular drug use.").

Since the courts have invented a temporal nexus requirement, it should come as no surprise that their creations are variable. Some circuits require the 'unlawful user' to possess the firearm contemporaneous to/with the drug use.

32

| | |
|---|---|
| *United States v. Caparotta*, 676 F.3d 213, 216 (**1st** Cir. 2012) | proximate to or contemporaneous with the possession of the firearm |
| *United States v. Bowens*, 938 F.3d 790, 793 (**6th** Cir. 2019) | contemporaneously with his purchase or possession of a firearm |
| *United States v. Purdy*, 264 F.3d 809, 812 (**9th** Cir. 2001) | contemporaneous with his firearms purchases |
| *United States v. Nevarez*, 251 F.3d 28, 30 (**2d Cir.** 2001) (per curiam) | contemporaneous with the commission of the offense |
| *United States v. Yancey*, 621 F.3d 681, 687 (**7th Cir.** 2010) (per curiam) | contemporaneous with the gun possession |

Other circuits take a different approach to a temporal nexus between the unlawful use and gun possession.

| | |
|---|---|
| *United States v. Yepez*, 456 Fed Appx 52 (**2d Cir**. 2012) | reasonably covers the time of the events charged |

| | |
|---|---|
| *United States v. Hassan*, 26 F.4th 610, 616 (**4th** Cir. 2022) | close in time to his firearm possession |
| *United States v. Augustin*, 376 F.3d 135, 138-9 (**3rd** Cir. 2004) | at or about the time of the possession of the firearm |

And then two circuits stand in direct opposition to one another on the issuing of timing. The Eighth Circuit allows an instruction that says the "law does not require that he use the controlled substance at the precise time he possessed the firearm. Such use is *not limited to the use of drugs on a particular day* or within a matter of days or weeks before but, rather, that

33

the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct." *Carnes*, 22 F.4th at 748.  It speaks to the interpretive problem when a court requires that a defendant be shown to be "actively engaged" in drug use, but cannot specify whether such includes conduct which ceased weeks before.  In fact, the Eleventh Circuit disagreed with this gloss, saying that definition "directly undercut[s] the temporal nexus requirement." *Clanton*, 515 Fed Appx at 830.  The *Clanton* panel did not adopt any particular formulation, but affirmed the part of the jury instruction that said the defendant must be "actively engaged in the use of a controlled substance during the time he possessed the firearm," and that "the law does not require that he used the controlled substance at the precise time he possessed the firearm." *Id*.

The problem isn't just that the courts usurp Congress' role by rewriting the statute; it is compounded by the fact that the glosses don't fix the problem: the language added simply does not add any consistent way to know what the statute prohibits.  As the Supreme Court noted in *Johnson*, when courts have a history of failing to offer consistent interpretations and applications of a statute, such is strong evidence that the statute is unconstitutionally vague.  *Johnson*, 576 U.S. at 598 ("the failure of 'persistent efforts…to establish a standard'can provide evidence of

34

vagueness….[R]epeated attempts and repeated failures to craft a principled and objective standard…confirm its hopeless indeterminacy.").

The district court in this case was entirely correct in assessing the various descriptions of "user" in case law: "Rather than insisting that the legislature enunciate a clear standard to which an ordinary person can conform her behavior, these courts determine *ex post* that the defendant's behavior violated the statute." Vol I, 269. A defendant will not know whether he was a "user" on the date he possessed a firearm until the jury convicts him.

It is true that criminal statutes at times require judges and juries to apply standards that are somewhat indefinite, such as "risk." *See Johnson*, 576 U.S. at 597. However, when a jury considers whether a defendant's conduct poses an unreasonable risk of harm, they will be arguing facts and the commonly applied question of reasonableness: given a particular act, how unreasonable was a defendant's behavior? *See* 18 U.S.C. § 1112 (Manslaughter) (defining difference between voluntary and involuntary manslaughter as "upon a sudden quarrel or heat of passion" and "without due caution"). In applying § 922(g)(3), however, a jury will not be arguing facts or likelihood or reasonableness: they will be arguing over what the word "user" or "regular" means. It is by nature a semantic argument, not a factual one. "What renders a statute vague … is not the possibility that it will sometimes

35

be difficult to determine whether the incriminating fact it establishes has

been proved; but rather the indeterminacy of what that fact is." *United*

*States v. Williams*, 553 U.S. 285, 306 (2008).  The United States can certainly

prove the various specific instances of drug use that a defendant engaged in,

but whether such a use or uses constitutes being a "user" is fundamentally

indeterminate and non-factual.

And the issue as it arose in this case is plainly illustrative of this very

problem: when the jury sent a note asking for "clarity on the time frame in

which you would no longer be considered 'regular and ongoing basis'," I, 271,

it was asking the very question about what exactly the law prohibits, a

question that the court and counsel could not answer without rewriting the

statute and filling in what the legislature has improperly delegated.  So the

jury was left to perform the legislative function, and whatever discussion took

place in the jury room in response, you can be sure it was about the meaning

of the words, not the nature of the facts.

## B.  Second Amendment Context.

In his original motion to dismiss, Morales argued that the Second

Amendment affected the analysis of his facial vagueness claim.  I, 190-91.

The district court did not address this aspect of the argument, as it was

unnecessary to its reasoning.  *Id.* at 255, n.1.  The United States

acknowledges that under some circumstances, the vagueness analysis is

36

altered by the fact that the statute in question implicates fundamental

rights. Br., 16. (However, the United States is not correct in treating First

Amendment concerns as the only ones requiring special scrutiny under the

Court's vagueness precedents, and its insistence on the uniqueness of First

Amendment litigation is only partially supported by its authorities.) Courts

have consistently held that vagueness analysis is more rigorous where First

Amendment rights are affected by the challenged statute. *Grayned*, 408 U.S.

at 109 ("where a vague statute abuts upon sensitive areas of basic First

Amendment freedoms, it operates to inhibit the exercise of those freedoms.

Uncertain meanings inevitably lead citizens to steer far wider of the unlawful

zone … than if the boundaries of the forbidden areas were clearly marked.")

(cleaned up).

    However, First Amendment rights are not the only ones that cause

courts to more carefully examine statutes raising vagueness concerns. While

*Kolender* recognizes the First Amendment implications of the case, it also

notes that the statute at issue "implicates consideration of the constitutional

right to freedom of movement," the deprivation of which can raise Fifth

Amendment concerns. 461 U.S. at 358. *See Kent v. Dulles*, 357 U.S. 116, 125

(1958) ("The right to travel is a part of the 'liberty' of which the citizen cannot

be deprived without the due process of law under the Fifth Amendment….In

Anglo-Saxon law that right was emerging at least as early as the Magna

37

Carta."). *Papachristou* is even solicitous of the dangers vague laws pose to "the amenities of life as we have known them." 405 U.S. at 164. While these amenities might not be mentioned in the Bill of Rights, they "have been in part responsible for giving our people the feeling of independence and self-confidence, the feeling of creativity….[and] have dignified the right of dissent and have honored the right to be nonconformists and the right to defy submissiveness. They have encouraged lives of high spirits rather than hushed, suffocating silence." *Id*. They are, in other words, worthy of protection from vague statutes that deprive the people of fair notice and give the police unfettered discretion.

The Supreme Court long ago began examining more carefully statutes which implicate fundamental rights. Almost one hundred years ago in *Thornhill v. Alabama*, the Supreme Court determined that an anti-picketing statute was "invalid on its face" due to its "sweeping proscription of freedom of discussion. " 310 U.S. 88, 101-05 (1940). Without considering whether the defendant's actual conduct was entitled to First Amendment protection, the Court concluded that the law was unconstitutional because it "d[id] not aim specifically at evils within the allowable area of State control but, on the contrary, swe[pt] within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech or of the press." *Id*. at 97. Later, recognizing that First Amendment freedoms are "delicate and

38

vulnerable, as well as supremely precious in our society," and also "need breathing space to survive," the Court found that "government may regulate in the area only with narrow specificity." *Natl Assn for Advancement of Colored People v. Button*, 371 U.S. 415, 432-33 (1963); *see also Cantwell v. Connecticut,* 310 U.S. 296 (1940).

It is true that no court has yet held that a statute's effect on the exercise of Second Amendment rights requires either heightened vagueness or overbreadth analysis, and multiple cases have held that overbreadth arguments do not apply to the Second Amendment. *See United States v. Decastro,* 682 F.3d 160, 169 (2d Cir. 2012); *United States v. Masciandaro*, 638 F.3d 458, 474 (4th Cir. 2011); *United States v. Barton*, 633 F.3d 168, 172 (3d Cir. 2011); *Kachalsky v. Cacace*, 817 F. Supp. 2d 235, 272 (S.D.N.Y. 2011), *aff'd sub nom. Kachalsky v. Cnty. of Westchester*, 701 F.3d 81 (2d Cir. 2012). In general, however, none of these cases actively discussed <u>why</u> such a challenge was unavailable; they simply refused to consider the challenge in a Second Amendment context at all. Even if they assumed such a challenge was theoretically possible, they declined to address or resolve the issue, simply citing the defendant's inability to make an as-applied challenge as a prohibiting factor. *See Decastro,* 682 F.3d at 169 (holding that "[t]here is no overbreadth argument that Decastro can make in the Second Amendment context," and since his as-applied challenge failed, the facial challenge must

necessarily fail as well); *Masciandaro,* 638 F.3d at 474 (rejecting "the novel notion that an overbreadth challenge could be recognized" outside the First Amendment context, and rejecting a facial challenge on the basis that the as-applied challenge failed); *Barton,* 633 F.3d at 172 n. 3 (rejecting facial challenge under the Second Amendment because "we do not recognize an 'overbreadth' doctrine outside the limited context of the First Amendment").

Even given this historical response to Second Amendment arguments, it was recognized that the possibility does exist that overbreadth challenges may come under the Second Amendment. *United States v. Williams*, 616 F.3d 685, 693 (7th Cir. 2010)("we recognize that § 922(g)(1) may be subject to an overbreadth challenge at some point because of its disqualification of all felons"). And all these cases finding that no such challenge can exist were decided prior to the Supreme Court's watershed decision in *New York State Rifle & Pistol Assn, Inc. v. Bruen,* 142 S. Ct. 2111 (2022), which explicitly recognized that citizens' rights under the Second Amendment are equal to those of the First Amendment. *Bruen* even directly abrogated several of these cases, including *Kachalsky* and *Masciandaro.*

In *Bruen*, the Supreme Court recognized the historical importance of the right to bear arms guaranteed by the Second Amendment. Reviewing laws dating back to the 1200s, the Court found the legal and historical record replete with evidence that the right to carry a firearm in America was of

paramount importance. *See Bruen*, 142 S.Ct. at 2147 ("antebellum state-court decisions evince a consensus view that States could not altogether prohibit the public carry of 'arms' protected by the Second Amendment or state analogues."); *id.* at 2149 ("everyone started out with robust carrying rights"); *id.* at 2150 ("None of these historical limitations on the right to bear arms… operated to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose."); *id.* at 2151 ("Chief Justice Taney [in 1857] recognized …that public carry was a component of the right to keep and bear arms"); *id.* at 2154 ("overwhelming evidence of an otherwise enduring American tradition permitting public carry"); *id.* at 2156 (apart from a few outliers, "American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense."). After canvassing nearly 800 years of history, the Supreme Court recognized that the right to carry a firearm, enshrined in the Second Amendment, is almost unassailable.

*Bruen* also went to great lengths to establish that Second Amendment rights are equally as important as First Amendment rights. 142 S. Ct. at 2127 (it is "widely understood that the Second Amendment ... codified a *pre-existing* right" rather than "lay[ing] down a novel principle")(emphasis in original); *id.* at 2130 (this new "Second Amendment standard accords with how we protect other constitutional rights" including the "the freedom of

speech in the First Amendment"); *id.* at 2156 ("The constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.' We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need. That is not how the First Amendment works when it comes to unpopular speech or the free exercise of religion….And it is not how the Second Amendment works when it comes to public carry for self-defense.").

By recognizing that the Second Amendment has the same status as the First Amendment, the Supreme Court opened the door for an enhanced vagueness analysis based on the Second Amendment.

This context has two effects in this case: *first*, on whether a defendant can raise issues beyond those implicated by the facts of his own case, and *second*, on the standards applied by the court when considering whether the statute is unconstitutionally vague.

i.    **No as-applied challenge is required when fundamental rights are implicated.**

As argued above, supra pp. 7-25, any implication that a defendant cannot make an argument as to the facial invalidity of a statute unless he can show that it is unconstitutional as applied to him no longer exists following the Supreme Court's clarification of that rule in *Johnson*.

42

Nevertheless, to the extent that this court is uncertain as to the application of *Johnson* that fundamental rights under the Second Amendment are implicated by this statute means that such gatekeeping rules are inapplicable anyway. The Supreme Court has made clear that when a statute implicates First Amendment rights, the court allows a defendant to argue that, regardless of whether his facts are clearly within the scope of the statute, vagueness in the language has a broader effect on everyone's exercise of their rights. *United States v. Williams*, 553 U.S. 285 at 304 ("Although ordinarily a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others, we have relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." ); *Gooding v. Wilson*, 405 U.S. at 520-21 ("the transcendant value to all society of constitutionally protected expression is deemed to justify allowing attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statue drawn with the requisite narrow specificity.")

Following *Bruen's* clear holding that Second Amendment rights are as fundamental under the Constitution as those protected by the First, this analysis must also be applied to the statute in this case.

43

### ii.    Strict standards of clarity are required for regulating fundamental rights.

When considering whether a statute implicating fundamental rights is vague, the court must apply a strict standard, and fully consider whether the vagueness will interfere with the public's proper exercise of its rights because of uncertainty as to whether the statute will apply to them.  "[S]tandards of permissible statutory vagueness are strict in the area of free expression. . . . The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application."  *Button*, 371 U.S. at 432-33.  *See also Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) (holding ordinance "unconstitutionally vague because it subjects the exercise of the right of assembly to an unascertainable standard"); *Smith v. California*, 361 U.S. 147, 151 (1959) ("[S]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser.");

As argued above, supra p. 25-36, the language of § 922(g)(3) is so indeterminate as to preclude clear application under ordinary Fifth

44

Amendment standards.  In considering the adequacy of this language to define a criminal offense affecting fundamental rights, however, the court should apply an even more rigorous standard of clarity, as vagueness as related to such rights has more dire consequences.  Fundamental rights such as those protected by the First and Second Amendments are explicitly protected because their deprivation poses far greater dangers to both citizens and the nation, and vague language limiting these rights which might be tolerated in other contexts cannot be upheld in this context.

The firearm restrictions of § 922(g)(3) for users of federally controlled substances, combined with the wide availability and broad consumption of such substances under state law creates a situation where large numbers of citizens may be precluded from exercising their rights under the Second Amendment.  In this case, the problems with vagueness in the language of this statute is made especially clear when the differences between state and federal controlled substances law are considered.  Currently, twenty-one states – along with Washington, D.C. and Guam – have legalized the possession of marijuana.  Claire Hansen, Horus Alas, and Elliott Davis Jr., *Where is Marijuana Legal? A Guide to Marijuana Legalization,* U.S. NEWS AND WORLD REPORT, Dec. 14, 2022, at https://www.usnews.com/news/ best-states/articles/where-is-marijuana-legal-a-guide-to-marijuana-legalization. More than 155 million Americans now have legal access to marijuana.

45

Natalie Fertig, Mona Zhang and Paul Demko, *Nearly half of Americans reside in states where marijuana is legal,* POLITICO, Nov. 9, 2022, at https://www.politico.com/news/2022/11/09/half-americans-state-marijuana-legal-00065987.  In addition, under current federal prosecution guidelines, those who consume marijuana in compliance with state law are assured that they will not be prosecuted for such, in effect acknowledging that the states' legalization will be given federal effect as a matter of prosecutorial discretion. *See* A Review of the President's Fiscal Year 2023 Funding Request for the U.S. Department of Justice, April 26, 2022, at 1:22:00, available at https://www.appropriations.senate.gov/hearings/a-review-of-the-presidents-fiscal-year-2023-funding-request-for-the-us-department-of-justice; *see also Attorney General Garland Reconfirms the DOJ's Hands-Off Approach Toward Federal Marijuana Prosecution,* May 3 2022, at https://www.jdsupra.com/legalnews/attorney-general-garland-reconfirms-the-9983989/.

The result of this is a broad category of citizens who may be restricted from exercising their fundamental right to bear arms based upon a vaguely worded statute that creates a real problem for anyone seeking to obey the law.  Because there is no set time frame for determining whether one is a drug "user," a large body of law-abiding citizens would be unable to determine whether their consumption pattern of the various forms of state-

legal but federally controlled substances may preclude them from firearm possession, thereby having exactly the chilling effect which the overbreadth doctrine was meant to avoid.  In the context of the First Amendment, the Supreme Court has carefully considered whether a vague prohibition leaves even those who seek to follow the law unable to fairly conform their conduct. *See Winters v. New York*, 333 U.S. 507, 519-20 (1948)("it does not seem to us that an honest distributor of publications could know when he might be held to have ignored such a prohibition."); *Grayned*, 408 U.S. at 108 ("Vague laws may trap the innocent").  Here, the same problem presents itself: how infrequent does a person's consumption of marijuana need to be in order for one who wishes to abide by the law to know that he can exercise his rights under the Second Amendment?  How soon after such consumption can he acquire a firearm?  Does an intent to consume marijuana at some point in the future mean that some instance of past use will make him a current user? The statute itself, even as interpreted by the courts, offers no reasonable answer.

Further, while the federal government has decided that use of marijuana in compliance with state law will not be prosecuted, no such assurance has been provided as to prosecutions under § 922(g)(3) of those who consume marijuana in compliance with state law.  The fact that the federal government has elected not to enforce federal marijuana prohibitions

47

in some states but may prosecute those who use it just for exercising their Second Amendment rights implicates the problem of arbitrary enforcement: when there are broad swaths of citizens who engage in two forms of common behavior, using marijuana on occasion and owning a firearm, the risk of arbitrary enforcement becomes manifest.

If the United States wishes to preclude those engaging in such a common practice as marijuana consumption from possession of firearms, it might be able to do so,[7] but the law must, in any event, be clear as to what degree of consumption is sufficient to violate the law. Section 922(g)(3), as written, fails to give ordinary citizens, especially in states where marijuana consumption is effectively legal, any real ability to know when they must forego exercising their fundamental rights under the Second Amendment, and so the chilling effect on that right is apparent. *D.L.S. v. Utah,* 374 F.3d 971, 975 (10th Cir. 2004)(chilling effect arises "from an objectively justified fear of real consequences" such as a "credible threat of prosecution or other consequences following from the statute's enforcement.").

---

[7]     The constitutionality of § 922(g)(3) under *Bruen's* analysis of the scope of the Second Amendment is questionable, given the lack of any historical tradition for limiting firearm possession by one who has, at some point, used a controlled substance. *See United States v. Harrison*, CR-22-00328-PRW (W.D.Okla February 3, 2023) (§ 922(g)(3) violates the Second Amendment).

### 3.    Section 922 (g)(3) is unconstitutionally vague as applied to Morales.

If this court agrees that § 922(g)(3) is unconstitutional on its face, it need go no further in affirming the district court.  However, the statute is also unconstitutional as applied to the facts of this case, and indeed, consideration of the facts of this case serves to emphasize the vagueness problems of the statute on its face.

The evidence at trial indicated that Morales admitted to using methamphetamine and marijuana on one occasion in early December of 2019, at least 5 weeks prior to his firearm possession.  I, 192.  This is the only evidence of actual use by Morales.  In considering whether § 922(g)(3) is vague as applied to Morales, therefore, the court must consider the actual evidence of his behavior and decide whether the term "user" is sufficient to plainly encompass that behavior such that he should have clearly understood that he was precluded from possessing a firearm as a result of his drug use.

The United States characterizes Morales's use, based on this evidence, as "apparently habitual," but the evidence of itself does not in any way support such a characterization.  Br., 34-35.  The interview transcript cited implies some familiarity with the use and purchase of drugs, but records only a single instance of actual use.  The only other evidence cited was the fact that he possessed user amounts of methamphetamine at the time of his

firearm possession,[8] allowing an inference that Morales may have intended to use such at some point in the future.  Even if true, there was no evidence that he would still have been in possession of a firearm at that point.  One who has engaged in such behavior would not be on notice that his conduct qualifies him as a "user" even if clarified to mean one who engages in "regular use over a long period of time."  *Caparotta*, 676 F.3d at 216.  Certainly the United States' characterization of this as establishing "habitual" use is even more of a stretch.[9]

The United States also fails to address the issue of vagueness as applied, engaging in no analysis of the vagueness of the statute as applied to the evidence.  Instead, it discusses only the issue of whether the evidence is sufficient to support the conviction, applying as labels to Morales' conduct the same vague terms discussed above as being hopelessly indeterminate.  Br., 38 ("the government introduced evidence that Morales was a regular and habitual drug user at the time he possessed the firearm").  Blithely applying

---

[8] The United States also cites evidence of drug use (methamphetamine and a pipe) found in the car Morales was a passenger in, but the connection of these items to Morales is not sufficient to imply that he was in possession of them at any point.  In any event, they do not expand the time frame of use evidence at issue.

[9] Merriam Webster's Dictionary defines "habitual" as " regularly or repeatedly doing or practicing something or acting in some manner." *Habitual*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/habitual (last visited Feb. 23, 2023).  A single admitted use, even in combination with an inference of some future use, cannot qualify as "habitual" under this definition.

labels to Morales' drug use such as "regular" and "habitual" do not assist the court.[10]

The issue of whether a statute is vague as applied is almost the opposite of the question of whether the evidence is sufficient to convict under the language of the vague statute; indeed, almost any evidence of drug use might be sufficient to support a conviction when the standard applied is so vaguely described as "user," which is precisely the problem. Rather, when considering whether the statute is vague as applied to this case, the court must ask a very different question: was the defendant's conduct so clearly within a reasonable core meaning of the statute that a person who acted as the defendant acted could be expected to be on notice that his conduct was a violation of the statute? "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Jordan v. Pugh,* 425 F.3d 820, 824-25 (10th Cir.2005)(*quoting Hill v. Colorado,* 530 U.S. 703, 732 (2000)).

---

[10] The United States' labels seem to be based upon unstated assumptions regarding what it means to be a drug user: i.e., that one who uses on occasion is likely to use again. There is no evidence in this case regarding patterns of drug use or addiction, so evidence of drug use on one occasion (or even two) on this record cannot give rise to any presumption that use will recur often or on a "regular" basis.

One who has a single instance of drug use 5 weeks prior to firearm possession cannot be reasonably expected to understand that the month-old drug use gives them some status as a "user" who cannot possess a firearm. Indeed, the interpretive gloss given by courts to the term to make it less vague do not make the application of the statute any more apparent: if one only qualifies as a "user" based on "regular use over a long period of time," *Caparotta*, 676 F.3d at 216, the facts of this case would provide no reasonable notice to such a person that firearm possession is precluded more than a month after an instance of drug use. Whatever "regular" use means, it is certainly vague as applied to evidence of the timing of only a single use, even assuming there is an available inference that Morales intended to use again some five weeks later. And even if there were evidence of two actual instances of drug use, that cannot reasonably be described as "regular," a word implying some sort of pattern.[11] This is even if we ignore the accompanying temporal requirement that courts have applied, that such regular use be over a period of time, variously described by courts as "long" or "extended." *See supra*, pp. 25-36. Is five weeks a long period of time? Any answer is entirely speculative and based on unstated comparative

---

[11] "Regular" is defined as "constituted, conducted, scheduled, or done in conformity with established or prescribed usages, rules, or discipline" or "recurring, attending, or functioning at fixed, uniform, or normal intervals". *Regular*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/regular (last visited Feb. 23, 2023).

assumptions, and such a requirement certainly does not give notice under these facts.

Second, the risk of arbitrary enforcement under the facts of this case is very real. There was essentially no dispute at trial as to any of the underlying facts: Morales admitted to an instance of use, and was found possessing a gun over a month later. The fact that the jury was tasked with applying an indefinite standard of "use" to these facts meant that enforcement of the law was left essentially to a jury's sense of what "regular" use might be, unguided as to how to apply such a standard. The district court's discomfort with the definitional task left to the jury by the legislature is understandable, and these facts therefore present an especially great risk of arbitrary enforcement.

## Conclusion

The district court in this case struggled to find a way to fairly guide the jury in determining whether Morales was a "user" of a controlled substance, and this difficulty is a clear indication that the statue at issue is unconstitutionally vague. The term "user" has no clear boundaries, and the words added by courts to explain and narrow it do not actually offer any clarity. If a court attempted to clarify it reasonably, that court would essentially be taking on a legislative function. This is the hallmark of an

unconstitutionally vague statute, one which has especially pernicious effects as it defines a crime and limits fundamental rights under the Second Amendment.  Morales asks this court to find that § 922(g)(3) is unconstitutional on its face, and affirm the district court's order.

## Statement Regarding Oral Argument

Oral Argument is requested due to the novelty and complexity of issues

raised.

Respectfully submitted,
SCOTT KEITH WILSON
Federal Public Defender


*/s/ Jessica Stengel*
JESSICA STENGEL
Assistant Federal Defender
46 West Broadway, Suite 110
Salt Lake City, Utah 84101
(801) 524-4010
Email: Jessica_Stengel@fd.org

## Certificate of Compliance

**Word Count**

 As required by Fed. R. App. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 12,237 words. I relied on my word processor, Microsoft Word 365, to obtain the count.

*/s/ Liza Miller*
Paralegal to Jessica Stengel
46 W. Broadway, Suite 110
Salt Lake City, UT 84101
(801) 524-4010

## Certificate of Service and Digital Submissions

- I HEREBY CERTIFY that I am an employee of the Utah Federal Public Defender Office, and that an electronic copy of the foregoing was served via the ECF system to the party named below, on 2/28/2023:

  Elizabethanne Claire Stevens
  Assistant United States Attorney
  District of Utah
  111 South Main Street, Suite 1800
  Salt Lake City, UT 84111-2176

  Nathan Jack
  Assistant United States Attorney
  District of Utah
  111 South Main Street, Suite 1800
  Salt Lake City, UT 84111-2176

- I also certify that any required privacy redactions have been made.

- I also certify that the digital submission of this document has been scanned for viruses with scanning program Apex One Security Agent AntiVirus Smart Scan Agent Pattern File Dated 2/28/2023, 18.283.00.

- According to the program, the file is free of viruses.

*/s/ Liza Miller*
Paralegal to Jessica Stengel
46 W. Broadway, Suite 110
Salt Lake City, UT 84101
(801) 524-4010

**Attachment A**

Judgment in a Criminal Case

Dated August 9, 2022